Marjorie HILL, individually and on behalf of all other similarly situated, Plaintiff,

Rose Roesch, individually and on behalf of all other similarly situated, Proposed Plaintiff–Intervenor,

v.

Louis SULLIVAN, Secretary of Health and Human Services, Defendant.

No. 87 Civ. 4344 (JMW).

United States District Court, S.D. New York.

April 12, 1989.

MEMORANDUM AND ORDER

WALKER, District Judge:

## I. INTRODUCTION

This is a proposed class action for declaratory and injunctive relief against Louis Sullivan, the Secretary of Health and Human Services ("the Secretary").[1] The named plaintiff, proposed intervenor and proposed class members are widows or widowers [2] who have or will apply for disability benefits under the Old–Age, Survivors, and Disability Insurance program of Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 402(e), 423(d). The proposed class challenges the methodology used by the Secretary in determining whether or not to grant disability benefits to widows under the Act. Plaintiffs allege that the Secretary has violated the Act, and thus denied widows their disability benefits, because defendant fails to evaluate a widow claimant's residual functional capacity.[3] In addition, plaintiffs allege that the defendant's system of determining disability benefits fails to properly consider pain and other symptoms when assessing the severity of impairments; permits adjudicators to dismiss claims for widow's disability benefits without adequate explanation of why impairments do not meet or equal a listed disability [4]; and violates the Administrative Procedure Act (the "APA"). As a result,

John E. Kirklin, Matthew Diller, Legal Aid Soc., New York City, Marshall Green, Stacy Cromidas, Legal Aid Soc., Bronx, N.Y., Anthony Alfieri, Michael L. Perlin, Federal Litigation Clinic, New York Law School, New York City, for plaintiff and proposed plaintiff class.

John C. Gray, Nancy Chang, Brooklyn Legal Services Corp., Brooklyn, N.Y., for proposed plaintiff-intervenor.

Sapna V. Raj, Sp. Asst. U.S. Atty., New York City, for the Government.

1. This action was originally brought against former Secretary Otis R. Bowen, in his official capacity. While the motions were *sub judice,* Louis Sullivan replaced Bowen as Secretary.

2. For convenience only, the Court will refer to widows and widowers collectively as "widows."

3. Residual functional capacity ("RFC") is a "medical assessment" which measures various functions including physical abilities and mental impairments. 20 C.F.R. 404.1545(a). It is "an assessment of what you can still do despite your limitations." *Id.* Plaintiffs use the term "RFC" because "that is the term the Secretary uses for measurement of the functional consequences of impairments. The heart of plaintiffs' claim is that *the statute* mandates consideration of such functional consequences." Plaintiffs' Sur–Reply Memorandum in Further Opposition to Defendant's Motion to Dismiss ("P. Sur–Reply"), at 8 n. 5.

References throughout this Memorandum are as follows: First Amended Complaint ("Am. Comp."); Proposed Intervenor Complaint of Rose Roesch ("Int.Comp."); Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and in Support of Defendant's Motion to Dismiss ("D.Opp."); Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("P.Opp."); Defendant's Reply Memorandum in Further Opposition to Plaintiffs' Motion for Class Certification and In Further Support of Defendant's Motion to Dismiss ("D. Reply").

4. The Secretary has established criteria in approximately 120 listings which specify medical criteria and set forth standards for measuring different medical conditions. If a claimant meets or equals a listing, that claimant is presumed to be disabled. The listings are discussed more fully below.

plaintiffs argue that they are denied "an opportunity to establish that their impairments render them incapable of any gainful activity." P.Opp. at 7.

The plaintiffs move for class certification pursuant to Rule 23(c) of the Federal Rules of Civil Procedure. The defendant opposes this motion and in turn moves to dismiss the plaintiffs' action pursuant to Fed.R. Civ.P. 12(b)(6). In addition, proposed plaintiff Rose Roesch moves to intervene. After reviewing the legislative history of the Act and its relevant amendments; recent court opinions that have addressed the same or substantially similar issues; the parties' submissions in this case; and after hearing oral argument, this Court concludes that the proposed class action cannot be dismissed for failure to state a claim. Accordingly, and for the reasons stated below, this Court denies the defendant's motion to dismiss, grants the plaintiffs' motion for class certification, and grants Rose Roesch's motion to intervene.

## II. FACTUAL BACKGROUND

On defendant's motion to dismiss, the Court, as it must, construes the amended complaint in the light most favorable to the plaintiffs. *See, e.g., Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969).

Named plaintiff Marjorie Hill is 52 years old. Her sole source of income remains a monthly Supplemental Security Income ("SSI") disability grant of $357.24. According to the doctors who have examined her, she has coronary heart disease, pulmonary disease, status post hysterectomy and cholecystectomy, uncontrolled hypertension, and severe pain. In May 1985, she filed concurrent applications for widow's disability benefits under the Act and disability benefits under the SSI program of Title XVI of the Act. Defendant denied both applications initially and again when reconsidered. Hill then had a *de novo* hearing before an administrative law judge

("ALJ"). The ALJ found that Hill's impairments prevented her from performing her past relevant work and also limited her residual functional capacity to "less than" sedentary work. *See* Am.Comp., Ex. A at 4.

The ALJ then issued two decisions. First, he found Hill disabled and eligible for SSI benefits; second, he found her ineligible for widow's disability benefits because none of her impairments "singly or in combination meet or equal any of the Listings in Appendix 1 to Subpart P." *Id.,* Ex. B at 3. Hill's request for review by the Appeals Council, the third stage of her administrative review, was denied, so she has brought this action under 42 U.S.C. 405(g).[5]

Proposed intervenor Rose Roesch was injured in recent accidents. She now has several physical impairments. *See* P.Opp. at 3. Roesch followed a course similar to that of plaintiff Hill. In September of 1986, she applied for both SSI and widow's disability benefits. At the intial determination stage and upon reconsideration, both applications were denied. In January of 1988, an Administrative Law Judge ("ALJ"), after a hearing, reversed the denial of Roesch's SSI application, but affirmed the denial of widow's benefits. In granting the application for SSI benefits, the ALJ concluded that

> the evidence indicates that the claimant is unable to perform the exertional requirements for sedentary work and is unable to sit up to six hours during an eight hour day, lift up to ten pounds, travel to work or walk normally ... [T]he claimant has complaints of unremitting pain, which is substantiated by the medical evidence ... [Her] depression further restrict[s] her ability to perform work activity.

*See* Int.Comp., Ex. A.

In affirming the denial of Roesch's claim for widow's benefits, the ALJ stated that

---

5. A claimant who has been deemed ineligible can seek relief through a three stage administrative review process. Marjorie Hill followed that procedure. These three stages exhaust the claimant's administrative remedies and, if an adverse decision is still present, claimant can seek judicial review in federal district court pursuant to 42 U.S.C. § 405(g). The claimant has sixty days to proceed to this final stage, or the last decision is considered binding.

"[t]he medical evidence of record does not establish that the claimant has any impairment or combination of impairments which is medically equivalent to an impairment listed in Appendix 1." *Id.* Roesch appealed this decision to the Appeals Council, which remanded the matter to an ALJ for further proceedings. On December 6, 1988, an ALJ issued a decision in which he concluded, in relevant part, that "the claimant [Rose Roesch] is entitled to widow's insurance benefits based on disability ..." Roesch nonetheless continues her request to intervene in this class action, based on what she calls the partly unfavorable decision by the ALJ. While he did determine that Roesch was eligible for widow disability benefits from July 27, 1987, he also determined that she was ineligible for those benefits for the period between August 7, 1985—when Roesch alleges she first became disabled—to July 27, 1987. Roesch argues that, in reaching this decision, the ALJ relied upon the very policies and practices which are being challenged by this action. Roesch admits that she has not yet exhausted her administrative remedies.

### III. STATUTORY BACKGROUND

This case focuses attention on three sources that require interpretation: the Social Security Act itself; regulations promulgated under the Act; and internal Social Security rulings.

Among other groups, the Act provides for benefits to wage earners and widows. To qualify for disability benefits, a widow claimant must satisfy a more stringent test than that applicable to a wage earner claimant. The Act itself provides that "a widow's disability must be sufficiently severe to preclude an individual from engaging in 'any' gainful activity, whereas a wage earner's disability need be sufficient to preclude an individual from engaging in any 'substantial' gainful activity." *Gallagher v. Schweiker,* 697 F.2d 82, 84 n. 2 (2d Cir.1983); *compare* 42 U.S.C. § 423(d)(2)(A) *with id.* § 423(d)(2)(B). In determining the severity of a widow's physical and/or mental impairments,

> the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

42 U.S.C. § 423(d)(2)(C).

To determine disability generally under the Act, the Secretary follows a five-step sequential evaluation process established by regulation. *See* 20 C.F.R. § 404.1520. That process has been discussed in detail in several recent Second Circuit opinions.[6] Only the first three steps of this process apply to widows. *See* D.Opp. at 22. According to the government, that means that for a widow claimant, RFC—addressed in step four—will not be considered, nor will age, education and work experience—addressed in step five—be considered.

The Act also authorizes the Secretary to promulgate additional regulations that spe-

---

**6.** "The first step ... is a decision whether the claimant is engaged in 'substantial gainful activity.' If so, benefits are denied. If not, the second step is a decision whether the claimant's medical condition or impairment is 'severe.' If not, benefits are denied. If the impairment is 'severe,' the third step is a decision whether the claimant's impairments meet or equal the 'Listing of Impairments' set forth in ... the Social Security regulations ... These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satis-

fy the 'Listing [ ],' the fourth step is assessment of the individual's 'residual functional capacity,' i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied ... If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform 'alternative occupations available in the national economy.' If not, benefits are awarded." *City of New York v. Heckler,* 742 F.2d 729, 732 (2d Cir.1984); *Tolany v. Heckler,* 756 F.2d 268, 270 (2d Cir.1985) (citations omitted).

cifically apply to widows: "a widow ... shall not be determined to be under a disability ... unless [his or her impairments] are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B).

In accordance with that authority, the Secretary has promulgated two relevant regulations. The first provides that age, education and work experience will not be considered in determining a widow's eligibility. *See* 20 C.F.R. § 404.1577 (1987). The second provides that disability will be found if a widow's impairments have specific clinical findings that are "the same as those for any impairment" on the Listing, or are "medically equivalent" to those for any listed impairment. *See* 20 C.F.R. § 404.1578 (1987); *Tolany v. Heckler*, 756 F.2d at 270-71.[7]

This case also implicates at least two internal Social Security Rulings.[8] The first, SSR 88-13[9], provides, in relevant part, that "an alleged or reported increase in the intensity of a symptom cannot be substituted no matter how severe for a missing or deficient sign or finding to elevate impairment severity to equivalency to the listed impairment." The second, SSR 83-19, states in relevant part that "the functional consequences of the impairments, (i.e. RFC), irrespective of their nature or extent, *cannot* justify a determination of equivalence." (emphasis in original).

## IV. DISCUSSION

*A. Defendant's Motion to Dismiss:*

On defendants' motion to dismiss, all allegations in plaintiffs' amended complaint must be accepted as true and liberally construed. *Papasan v. Allen*, 478 U.S. 265, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986). The Court "should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (citation omitted).

At the outset, it remains necessary to set forth the applicable standard of review. It is not for the federal courts to instruct the Secretary on how best to administer the Department of Health and Human Services. And an agency's or department's interpretation of a statute need only be "sufficiently rational" to be a "permissible construction" of the statute. *Young v. Community Nutrition Institute*, 476 U.S. 974, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986). However, the Supreme Court has also recently explained that the appropriateness of a standard employed by an agency is "a pure question of statutory construction for the courts to decide." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1220-21, 94 L.Ed.2d 434 (1987). The Court must reject administrative practices "that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Securities Industry Association v. Federal Reserve Board*, 468 U.S. 137, 142-43, 104 S.Ct. 2979, 2982-83, 82 L.Ed.2d 107 (1984).

It is also important to note at the outset that plaintiffs have no disagreement with the Secretary's position that widows must satisfy a tougher statutory standard than wage earners in order to receive benefits. *See* P.Opp. at 6. Rather, plaintiffs argue that they are denied widow's disability benefits because of defendant's policy of not evaluating residual functional capacity.

7. An impairment must be found medically equivalent to a listed impairment in Appendix 1 if (1) medical findings, including symptoms, signs, and laboratory tests or studies, are at least equal in severity and duration to the listed medical criteria; or (2) medical evidence establishes an impairment not listed but medically equal to a listed impairment; or (3) the combination of impairments is medically equal to a listed impairment. 20 C.F.R. 404.1526(a)-(b).

8. The Secretary issues a Social Security Ruling ("SSR") to his adjudicators. A SSR is not subject to notice and comment procedures.

9. SSR 88-13 recently superceded SSR 82-58. In their papers, the parties refer to the former ruling. The portions of the two rulings relevant to the current motions are substantially the same, a fact neither party disputes.

Without consideration of this factor, plaintiffs argue that they cannot demonstrate that their impairments are as disabling as those in the Listings. In addition, plaintiffs allege that the defendant's system of determining disability benefits fails to consider properly pain and other symptoms when assessing the severity of impairments; permits adjudicators to dismiss claims for widow's disability benefits without adequate explanation of why impairments do not meet or equal a listed disability; and violates the APA. As a result, plaintiffs argue that claimants are denied "an opportunity to establish that their impairments render them incapable of any gainful activity." P.Opp. at 7.

Given the present posture of this case on a motion to dismiss for failure to state a claim, it is unnecessary to decide definitively or to review exhaustively the merits of each claim raised by plaintiffs. The Court expects additional motions to follow the completion of discovery, at which time a more complete review will be appropriate. For present purposes, it is sufficient to note a few bases for the Court's decision to deny the Secretary's motion to dismiss.

### 1. Plaintiffs' First Claim: An Evaluation of RFC

█ In responding to the claim that the Secretary does not adequately evaluate RFC, the Secretary has not adequately addressed the legislative history of the Act and of its Listings, particularly as they are discussed in a recent opinion from another district which required an evaluation of a widow claimant's RFC. *See Marcus v. Bowen,* 696 F.Supp. 364 (N.D.Ill.1988). Nor has the Secretary sufficiently distinguished a recent decision from the Third Circuit. *See Zebley v. Bowen,* 855 F.2d 67 (3d Cir.1988).[10]

Moreover, the Secretary himself has pointed to a recent Supreme Court case which held that "the disability claims of widows ... are decided solely on the basis of medical factors." *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 2295 n. 7, 96 L.Ed.2d 119; D.Opp. at 24. Yet elsewhere in his papers, the Secretary concedes that RFC "is a 'medical assessment.'" *Id.* at 20 n. *. It is also far from certain that the Secretary's use of the "medical equivalence" characterizations, without consideration of RFC, fulfills his statutory mandate.

Furthermore, the Second Circuit has noted that the first regulation at issue here—Section 404.1577—mentions three of the four factors listed in step five of the basic procedure: age, education, and work experience. It does not, however, mention the final factor—residual functional capacity—included in that fifth step. *See Tolany,* 756 F.2d at 271. When the Second Circuit noted that distinction, it observed that the absence of RFC from the regulation "suggests that [RFC] will be considered." *Id.* The court went on to observe that

> the procedure for widows explains that disability *will be found* if the claimant *has* a listed impairment or the equivalent; it does not state that such an impairment is the only basis for meeting the statutory standard. If a claimant has an impairment that is not listed and is not the medical equivalent of a listed impairment, but the claimant nevertheless is unable to engage in any gainful activity, it is difficult to see how that person may be denied benefits. It would seem anomalous if an impairment that is only presumed to be disabling because it is listed results in allowance of benefits, yet an impairment that in fact leaves the claimant without the residual functional capacity to engage in any gainful activity is insufficient to warrant benefits.

*Id.* at 271 (emphasis in original). The Secretary has not yet convincingly responded to the Second Circuit's concerns.

This Court concludes that the Secretary's position provides an insufficient foundation

---

**10.** The Third Circuit addressed this issue in the context of children's disability requirements. Children, like widows, were only found disabled if their impairment(s) were either on the List or were the equivalent of a listed impairment. The court held "that the Secretary's regulatory scheme is too restrictive to be consistent with the statute. The statute requires that children, like adults, be given an opportunity for *individualized assessment* of the severity of their *functional limitations." Id.* 855 F.2d 69.

to support his motion. Accordingly, the Court will not dismiss this claim.

### 2. Plaintiffs' Second Claim: Pain as a Symptom

 The issue here is whether the Secretary violates the Act by refusing to consider pain as a factor that may elevate the severity of impairments to a level where they are equivalent to the Listings. *See* Am.Comp. ¶ 44(h); SSR 88–13. The Secretary does not adequately explain the inconsistency between his position, *see* D.Reply at 29, and SSR 88–13, which explicitly informs adjudicators that "an alleged or reported increase in the intensity of a symptom cannot be substituted no matter how severe for a missing or deficient sign or finding to elevate impairment severity to equivalency to the listed impairment." Instead, the Secretary quotes at length from other portions of the predecessor to that ruling. *See id.* at 31.[11]

Furthermore, the Secretary has failed to explain adequately why *Gallagher v. Schweiker*, 697 F.2d 82 (2d Cir.1983) does not compel a denial of his motion to dismiss this claim. *See id.* at 84 ("[O]nce such an impairment has been diagnosed, pain caused by the impairment may be found to be disabling even though the impairment 'ordinarily does not cause severe, disabling pain.' The pain need not be corroborated by objective medical findings, but some impairment must be medically ascertained[.]'") (citation omitted). Accordingly, defendant's motion to dismiss this claim is denied.

### 3. Plaintiffs' Third Claim: The Secretary's Findings

The third claim of the proposed class alleges that the Secretary fails to make

sufficient findings setting forth his reasons for denying benefits. The Secretary raises two objections, one focusing on his burden and the other on the propriety of a class action to address this claim.

 The Secretary first argues that his burden remains slight.

> The Act states that claimants are entitled to know the reason for an unfavorable decision. If the decision states that the claimant has not proven that his impairment(s) meets or equals a listing, it shows that the Secretary considered the issue. That statement satisfies all requirements of the Act.... The conclusory statement about medical equivalency made in the initial and reconsidered decisions ... satisfies the Act's articulation requirements.

D.Reply at 27–28. However, the Act requires that any decision to deny benefits on a disability claim must:

> contain a statement of the case, in understandable language, setting forth a discussion of the evidence and stating the Secretary's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). The Second Circuit has determined that the Act requires more than conclusory statements. *See Ferraris v. Heckler*, 728 F.2d 582, 586 (2d Cir.1984). *See also Cornelious v. Secretary of Health & Human Services*, 655 F.Supp. 1211, 1212–13 (W.D.N.Y.1987); *Thompson v. Secretary of Health & Human Services*, 559 F.Supp. 548, 551 (E.D.N.Y.1983). Consequently, plaintiffs' third claim survives the Secretary's motion to dismiss.

 The Secretary also argues that, even if his practices fall short of the statu-

---

11. The passage quoted by the Secretary addresses the "assess[ment of] symptoms such as pain as a factor of *RFC* ..." *Id.* (emphasis added). Before this Court, however, the Secretary argues that he need not, and does not, evaluate a widow's RFC. Yet in the context of pain evaluation, he relies on portions of a ruling that specifically address RFC. In other words, and in order to dismiss plaintiff's first claim, the Secretary first argues that RFC is irrelevant. Next, and in order to dismiss plaintiffs' second claim,

the Secretary affirmatively *relies* on his practices in the context of RFC evaluations. It remains difficult to understand how the Secretary can rely on the method he employs to evaluate a *wage earner* claimant's RFC—a procedure he himself argues is irrelevant in the context of this case—to justify his procedure for evaluating a *widow* claimant's allegations of pain. This inconsistency helps defeat the Secretary's motion to dismiss.

tory mandate, a class action remains an inappropriate vehicle in which to seek relief; rather, he argues, a determination of the sufficieny of a decision should be made on a case-by-case basis. To support his position, the Secretary relies on *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.1982). The Secretary, however, advances an inaccurate reading of that case.

*Berry* did not "conclude," as the Secretary argues, that "deficiencies in an ALJ's rationale should be considered on a case-by-case basis." Def.Reply Mem. at 29. The Secretary points to language in that opinion—"[we] would not hesitate to remand [a] case for further findings or a clearer explanation for the decision [if we concluded that the record before us was insufficient]," *Berry*, 675 F.2d at 469—which, he argues, supports his position. However, the court there was confronted not with a class action, but rather with an individual case, so the question of the appropriateness of a case-by-case determination was not before it. Indeed, the next line in that opinion undermines the Secretary's argument, for the court explained that "in future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Id.*

This Court considers a class action an appropriate way to address the Secretary's general practice. *See Schisler v. Bowen*, 787 F.2d 76 (2d Cir.1986) (class action appropriate in general challenge to agency instructions to its adjudicators). Regardless of whether or not each member of the proposed class deserves to receive benefits, each member faces the same practice. The Secretary himself has left no doubt as to what his policy is, and how that policy applies to each widow claimant. A class action affords the Court an opportunity to examine the sufficiency of the Secretary's denials of benefits.

### 4. Plaintiffs' Fourth Claim: A Purported Violation of the APA

Plaintiffs' final claim is that the challenged policies violate the APA. Plaintiffs argue that the rulings in question—SSR 88–13 and SSR 83–19—are substantive rules, which not only must be evaluated pursuant to the notice and comment procedures of the APA, but also must be published in the Federal Register. The Secretary argues that the rulings are interpretative rules, and as such are specifically exempted from the more stringent requirements applicable to substantive rules. *See* 5 U.S.C. § 553(b)(A), (d)(2).

The Second Circuit has explained that "[w]hile it is unfortunate that Congress has provided little guidance in distinguishing interpretative from substantive rules, the case law in this circuit looks to whether a rule 'changed existing rights and obligations.' ... Only rules that do not change 'existing rights and obligations' are considered interpretative." *Donovan v. Red Star Marine Services, Inc.*, 739 F.2d 774, 783 (2d Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1355, 84 L.Ed.2d 377 (1985) (citation omitted). The question then becomes, did the rulings at issue "change existing rights and obligations"?

SSR 83–19 states that "the functional consequences of the impairments [i.e., RFC] ... irrespective of their nature or extent cannot justify a determination of equivalence." SSR 88–13 prohibits adjudicators from finding medical equivalence to the Listings based on the intensity of pain and other symptoms. As discussed above, these restrictions do not appear in the statute or the regulations. The relevant regulation only excludes age, education and work experience. The Court thus denies defendant's motion to dismiss this claim. The record requires further development of whether or not the rulings in question substantively changed the existing right of a widow claimant to receive an individualized assessment of her medical condition.

### B. Class Certification:

The defendant raises no objections to certifying the proposed class pursuant to Fed.R.Civ.P. 23(a) and (b). The proposed class satisfies the familiar requirements of the Rule: it is so numerous that joinder of

all members is impracticable; there are common questions of law and fact among the class; the claims of the named plaintiff are typical of those of the class; and the Court has concluded that the named plaintiff will fairly and adequately protect the interests of the class and does not have interests antagonistic to those of the class. Further, the Court finds that the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications.

■ The defendant's objections focus on a separate argument based on 42 U.S.C. § 405(g), which sets forth the relevant jurisdictional requirements for any action brought pursuant to the Act: presentment, exhaustion of administrative remedies, and the filing of a complaint within 60 days of receiving a final decision from the Secretary. The Secretary seeks a denial of plaintiff's motion for class certification, or in the alternative, to narrow the class to be certified. The Court will consider each of defendant's objections in turn.

The Court finds the presentment prerequisite met. The class is prospective in nature; widows who "will file" claims will become members of the class only *after* they have presented their applications for benefits to the Secretary. *See Dixon v. Bowen*, 673 F.Supp. 123, 127 (S.D.N.Y. 1987). The inclusion of claimants in the class as they file claims does not violate the presentment requirement because "such individuals will not actually be covered by any order or judgment ... until they do make a claim for benefits ... thus satisfying the presentment requirement." *Dixon v. Heckler*, 589 F.Supp. 1494, 1512 (S.D.N.Y.1984), *aff'd*, 785 F.2d 1102 (2d Cir.1986), *vacated on other grounds*, 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987).

A court may waive the exhaustion requirement. *Mathews v. Eldridge*, 424 U.S. 319, 330–32, 96 S.Ct. 893, 900–01, 47 L.Ed. 2d 18 (1975); *City of New York v. Heckler*, 742 F.2d 729, 736 (2d Cir.1984), *aff'd*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). The courts may waive this requirement

where plaintiff's legal claims are collateral to the demand for benefits, where exhaustion would be futile, *or* where the harm suffered pending exhaustion would be irreparable ... [N]o one factor is critical. We have adopted a more general approach, balancing the competing considerations to arrive at a just result under the circumstances presented.

*City of New York*, 742 F.2d at 736 (citations omitted, emphasis added).

In *City of New York*, relied on by the plaintiffs, the Secretary refused to evaluate the RFC of a class of mentally disabled persons. *See id.* at 732. The Second Circuit deemed what it described as a procedural claim "substantially collateral" to the plaintiffs' substantive claims to benefits. *See id.* at 737 ("[T]he class here complains fundamentally of a procedural irregularity and not of the Secretary's substantive standards of eligibility ...") (citations omitted). In that case, there was no dispute that the Act required the Secretary to evaluate the RFC of mentally handicapped claimants. *See id.* at 732. This case, however, challenges a substantive standard of eligibility, not merely a "procedural irregularity"; much of this case revolves around a dispute over whether or not the Secretary must consider a widow claimant's RFC. As a result, the Court concludes that plaintiffs' claims are not "substantially collateral" to their entitlement to disability benefits.

However, the Court believes that the Second Circuit's explanation of the futility standard applies to this case. In *City of New York*, the court explained that it could

discern no legitimate interest to be advanced by requiring plaintiffs to travel through the administrative maze as a prerequisite of a judicial hearing. This is not a case ... where the claim asserted could benefit from further factual development or from the agency's "experience and expertise." Nor is this a case where exhaustion serves to "prevent[ ] premature interference with agency processes" or to allow the agency "an opportunity to correct its own errors." As in *Eldridge* it is not realistic to "expect that the Secretary would consider substantial

changes in the current administrative review system at the behest of a single aid recipient ... in an adjudicatory context."

*Id.* at 737 (citations omitted). Given the Secretary's rulings—SSR 83–19 and SSR 82–58—the Court finds *City of New York* dispositive on this point.

The final challenge raised by the Secretary focuses on § 405(g)'s requirement that a complaint be filed within 60 days of a claimant's receipt of the Secretary's final decision. The sixty-day limitation is not jurisdictional but rather is seen as a waivable statute of limitations. *City of New York,* 742 F.2d at 738; 106 S.Ct. at 2029. That statute of limitations is tolled in "the rare case" where "the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights ..." *Id.* at 738 and 106 S.Ct. at 2032. Here, the Secretary relies on an explicit ruling—SSR 83–19— which states that RFC will not be assessed for widow claimants, and that those claimants must prove that they meet or equal the Listings. Although that ruling was never published in the Federal Register, the Court does not believe it necessary to determine whether the Secretary's behavior amounts to a "clandestine policy" to "prevent[ ] plaintiffs from knowing of a violation of [their] rights." *Id.* Rather, the Court agrees with plaintiffs that the Secretary's failure to publish the challenged rulings "has had the same practical effect on claimants as the defendant's secretive conduct in [*City of New York*]." P.Sur–Reply at 28.[12]

We do not read the Supreme Court's opinion in *City of New York* as narrowly as does the Secretary. In that case, the Supreme Court addressed § 405(g):

The statute of limitations we construe in this case is contained in a statute that Congress designed to be "unusually protective" of claimants ... Moreover, Congress has authorized the Secretary to toll the 60–day limit, thus expressing its clear intention to allow tolling in some cases. While in most cases the Secretary will make the determination whether it is proper to extend the period within which review must be sought, cases may arise where the equities in favor of tolling the limitations period are "so great that deference to the agency's judgment is inappropriate." ... [W]e conclude that the application of a "traditional equitable tolling principle" to the 60–day requirement of § 405(g) is fully "consistent with the overall congressional purpose" and is "nowhere eschewed by Congress."

106 S.Ct. at 2030 (citations and footnotes omitted). The equities in this case convince the Court to toll the sixty day statute of limitations. Therefore, the class will be certified as proposed by the plaintiffs, with one modification [13]:

All New York State Residents who have claimed, are claiming, or will claim initial or continued widow(er)s disability under the Old–Age, Survivors and Disability Insurance program of the Social Security Act; and whose claims were, are or have become subject to defendant's alleged policy and practice of determining medical equivalence without weighing the combined effect and impact of their multiple impairments, assessing or considering their residual functional capacity, making findings of medical equivalence or considering pain and other symptoms as factors that may elevate the severity of their impairments.[14]

12. For much the same reason, the Court's opinion is not changed by *Pittston Coal Group et al. v. Sebben, et al.,* —— U.S. ——, 109 S.Ct. 414, 102 L.Ed.2d 408 (1988), a recent Supreme Court decision discussed in the Secretary's March 13, 1989 letter to this Court. In *Pittston,* the Supreme Court rejected a claim for equitable tolling because the challenged regulation was "plain for all to see." 109 S.Ct. at 425. That is not the case with the rulings at issue here, and for that reason at least, *Pittston* is inapposite. Moreover, as explained below, *see infra,* the principles articulated in *City of New York* guide

this Court's decision to toll the statute of limitations in this case.

13. The Court has added a single word—"alleged"—to plaintiffs' proposal in order to indicate that the certification itself is not meant to substitute for an ultimate disposition of plaintiffs' underlying claims.

14. The Court's conclusions based on § 405(g) render unnecessary a discussion of mandamus jurisdiction pursuant to 28 U.S.C. § 1361.

## C. The Roesch Motion to Intervene:

■ On December 6, 1988, an ALJ concluded that Roesch "is entitled to widow's insurance benefits based on disability ..." *See supra.* Roesch nonetheless continues her request to intervene in this class action, based on what she calls the partly unfavorable decision by the ALJ, who also concluded that Roesch was ineligible for benefits for the period between August 7, 1985—when Roesch alleges she first became disabled—to July 27, 1987. Roesch argues that, in reaching this decision, the ALJ relied upon the very policies and practices which are being challenged by this action. The Court agrees, and thus waives the exhaustion requirement for Roesch for the same reasons the requirement was waived for the plaintiff class.

The Court also concludes that Roesch satisfies the standards for permissive intervention pursuant to Fed.R.Civ.P. 24(b)(2). Her claim and those in the main action have questions of law and fact in common. *See id.* Furthermore, as she represents those who have not yet exhausted their administrative remedies, Roesch will "add to the Court's understanding of the facts." *Ellender v. Schweiker,* 550 F.Supp. 1348, 1359–60 (S.D.N.Y.1982), *app. dismissed,* 781 F.2d 314 (2d Cir.1986), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1987). Finally, while the government states the general rule that a court must consider whether a party would be unduly prejudiced by an intervention, the government fails to provide any reasons why it would be prejudiced in this case. *See* Def. Mem. in Opp. to Motion to Intervene at 5.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is denied, plaintiffs' motion to certify their class is granted, and Roesch is granted leave to intervene.

SO ORDERED.