David DIXON, Individually and on Behalf of all Others Similarly Situated, et al., Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of the Department of Health and Human Services, Defendant.

And Other Related Cases.

83 Civ. 7001 (WCC), 83 Civ. 8364 (WCC), 83 Civ. 8609 (WCC) and 84 Civ. 0110 (WCC).

United States District Court, S.D. New York.

June 29, 1989.

---

Robert Abrams, Atty. Gen. for the State of N.Y. (Mary Fisher Bernet, Asst. Atty. Gen., of counsel), New York City, for plaintiff-intervenors, Cesar Perales and the State of N.Y.

The Legal Aid Society, Civ. Div., Civ. Appeals & Law Reform Unit (Matthew Diller, Jean Schneider, Susan Sternberg, of counsel), New York City, for plaintiff class.

Benito Romano, U.S. Atty., S.D.N.Y. (Steven D. Obus, Asst. U.S. Atty., Sapna V. Raj, Sp. Asst. U.S. Atty., Annette H. Blum, Chief Counsel—Region II, Wendy Miller, Office of the General Counsel, Dept. of Health and Human Services, of counsel), New York City, for defendant.

WILLIAM C. CONNER, District Judge:

Defendant Secretary of the Department of Health and Human Services (the "Secretary") moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiffs ask the Court to stay the motion so that further discovery can be taken.[1] Defendant's motion is denied, with leave to renew.

## BACKGROUND

This class action was originally brought by applicants for and recipients of benefits based on disability under the federal Supplemental Security Income and Old Age Survivor's and Disability Insurance programs, administered by the Secretary pursuant to the Social Security Act, 42 U.S.C. § 401, *et seq.*, to challenge the Secretary's policy of denying benefits to claimants whose impairments are "not severe" without inquiry into the effect of claimants' ages, educations, and work histories on their ability to work. Defendant contended that the severity regulation is only used to screen out *de minimis* claims. Plaintiffs replied that the regulation is systematically applied to deny meritorious claims. Plaintiffs also challenged the Secretary's refusal to consider the cumulative effect of different impairments in making severity determinations.

The "severity regulation" is Step 2 of a five-step sequential evaluation procedure adopted by the Secretary in 1978, and clarified in 1980. *See* 20 C.F.R. § 404.1520. In 1982, the Secretary issued Social Security Ruling ("SSR") 82–55 instructing Social Security administrators not to consider the combined effects of impairments which do not individually meet the Secretary's severity standard. SSR 82–55 also listed 20 specific impairments which the Secretary determined are non-severe *per se*. *See* Plaintiff & Proposed Intervenors' Brief in Support of their Joint Motion for a Preliminary Injunction, appendix A. This ruling bound administrative law judges and the Appeals Council, and was made effective retroactively to August 20, 1980. After Congress passed the Disability Reform Act of 1984, the Secretary invalidated his practice of refusing to consider impairments in combination. SSR 85–III–II. Subsequently, the Secretary published SSR 85–28,

---

1. Although the class representative filed most of the papers opposing this motion, the State of New York, which intervened as a plaintiff in 1984, has "join[ed] in the individual plaintiffs' request that discovery proceed prior to briefing of any summary judgment motions." Letter from Plaintiff the State of New York.

which "clarifies the current policy for determining when a person's impairment may be found not severe." [2]

On June 8, 1987, while this action was pending, the Supreme Court, in *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), upheld the facial validity of the severity regulation. The Court had "no occasion to consider whether [the severity regulation] is valid as applied." *Id.* at 154 n. 12, 107 S.Ct. at 2297 n. 12. It noted Congress' concern that the Secretary might be "basing terminations of benefits solely and erroneously on the judgment that the person's medical evaluation is 'slight' according to very strict criteria," *id.* at 152 n. 9, 107 S.Ct. at 2296 n. 9 (quoting H.Rep. No. 618, 98th Cong., 2d Sess. 7 (1984), *reprinted in* 1984 U.S.Code & Admin.News 3038, 3045), and observed that SSR 85–28 was issued in response to such criticism, but refused "to construe this ruling." *Id.* at 154 n. 12, 107 S.Ct. at 2298 n. 12. Five Justices, however, acknowledged that there is evidence suggesting that Step 2 has been "applied systematically in a manner inconsistent with the [Social Security Act]." *Id.* at 157, 107 S.Ct. at 2298 (O'Connor, J., concurring); *id.* at 179, 107 S.Ct. at 2305 (Blackmun, J., dissenting).

On June 16, 1987, the Supreme Court granted *certiorari* in this case, and remanded it to the Second Circuit for reconsideration in light of *Yuckert.* On July 15, 1987, the Second Circuit vacated the preliminary injunction entered by Judge Lasker on June 22, 1984, and remanded the case to this Court. *Dixon v. Bowen*, 827 F.2d 765 (2d Cir.1987). On November 5, 1987, this Court denied plaintiffs' motion to reinstate the preliminary injunction. *Dixon v. Bowen*, 673 F.Supp. 123 (S.D.N.Y.1987).

Before this case was transferred to my docket, Judge Lasker ruled, in a letter dated September 17, 1987, that plaintiffs had "made a sufficient threshold showing under *City of New York v. Bowen*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) to justify their entitlement to discovery as to whether a clandestine policy of the Secretary existed which could support a finding that the statute of limitation should be tolled." Plaintiffs' Brief Opposing Summary Judgment, Exhibit C at 2. Although, since that time, defendants have produced many documents and interrogatory responses, plaintiffs still contend that they need further discovery on the statute of limitation issue in order to oppose this motion properly.

## DISCUSSION

### I. The Right to Discovery

Rule 56(f), Fed.R.Civ.P., provides that where the party opposing summary judgment does not have "facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." The drafters of the Rule explained that, under this provision, "summary judgment may be inappropriate where the party opposing it shows ... that he cannot at the present time present facts essential to justify its opposition." Fed.R. Civ.P. 56(e), advisory committee's note (1963). The rationale underlying this principle is simple: A party opposing summary judgment "should not be 'railroaded' into his offer of proof in opposition to summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (quoting *Celotex v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986); *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 10 (2d Cir.1983).

---

**2.** The ruling states:

An impairment or combination of impairments is found "not severe" and a finding of "not disable" is made at [step two] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

■ On the other hand, an incantation of a desire for further discovery will not by itself defeat an otherwise meritorious motion for summary judgment where the requested discovery is not reasonably likely to be of use in resisting the motion. "An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of the motion." *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981) (quoting *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir.1978) (Palmieri, J.)).

## II. The Need for Discovery

■ Defendant contends that plaintiffs' request for prospective relief should be dismissed at this time because "plaintiffs have not presented any evidence indicating that the Secretary currently intends to misapply [the severity regulations]." *Dixon v. Bowen*, 673 F.Supp. 123, 128 (S.D.N.Y.1987). The Secretary also maintains that the retroactive claims are time-barred.

Plaintiffs argue that they need further discovery to oppose defendant's assertion that the retroactive claims are time-barred.

Plaintiffs believe that with further discovery they will be able to show that the Secretary systematically and covertly misapplied the severity regulation. They maintain that the secretive nature of the Secretary's practices warrant tolling the statute of limitation under *Bowen v. City of New York*, 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). Plaintiffs wish to take five depositions,[3] and obtain, over the Secretary's claim of "deliberative process" privilege, a fifty-five page Social Security Administration ("SSA") Workgroup Report, that suggests that on the basis of publicly available statistical evidence, the application of the severity regulation became stricter after 1975.

Defendant replies that the Secretary's pre–1984 adjudication practices were known to the public years before the filing of the complaint in this action, and that, as a result, there is no basis for tolling the applicable statute of limitations. The Secretary points out that, early in this litigation, Judge Lasker and plaintiffs described SSR 82–55 and the Secretary's 1978 regulations as requiring a very strict severity test at Step 2. Defendant's Brief at 24–25. He adds that SSR 82–55 was widely available,

---

3. The individuals plaintiffs wish to depose are described by plaintiffs as follows:

*Dr. Henrieta Moritz*

Dr. Moritz has been involved in the development and application of the severity regulation since at least 1976. Apparently, Dr. Moritz has developed medical guides for disability evaluation, planned and supervised SSA studies and research projects, and supervised between 30 and 60 medical officers. Dr. Moritz was involved in the formulation of the medical examples of not-severe impairments that first came into use in 1976. She reviewed comments concerning SSR 82–55, and participated in SSA's 1984 evaluation of that ruling's impact. Dr. Moritz also participated in editing and developing SSR 85–28, and was a principal author of The Physician's Training Manual For Impairment Severity, distributed by SSA in November, 1988 which contains further examples of medical conditions deemed not severe. Plaintiffs' Brief at 11–13.

*Carol Dobbs Jones*

Ms. Jones co-authored SSR 82–55. She also reviewed comments of various SSA components on drafts of that ruling and recommended revisions. In addition, between 1980 and 1985, Ms. Jones conducted studies and analyses relating to general medical issues. Plaintiffs' Brief at 13.

*Janet Bendann*

Ms. Bendann co-authored SSR 85–28 and the accompanying revisions in SSA's Program Operations Manual System, and wrote the August 23, 1985 decision memorandum which approved the development of SSR 85–28. In addition, Ms. Bendann responds to inquiries from SSA components and state agencies concerning the construction of the 1985 ruling. Ms. Bendann is also familiar with the ways in which SSR 85–28 differs from prior SSA policy. Plaintiffs' Brief at 13–14.

*Patricia Owens*

From June, 1984 through September, 1986, Ms. Owens was responsible for all operational policies and procedures of the disability program. She ordered the 1984 reevaluation of SSR 82–55 and the recision of that ruling, approved the decision memorandum recommending the issuance of SSR 85–28, and made changes on numerous drafts of that ruling. Plaintiffs' Brief at 14–15.

*Deponent with Operational Knowledge of Early Severity Practices*

Plaintiffs also seek to depose an SSA official involved in formulating SSA policy regarding not-severe impairments in the late 1970s. Plaintiffs' Brief at 15.

because it was published by the CCH Unemployment Insurance Reporter and the Social Security Reporting Service. Defendant's Reply Brief at 4. Furthermore, defendant argues that the Secretary's adjudication practices were the subject of an extensive Congressional inquiry and public debate. Defendant's Brief at 25–31.

Before I discuss the issues, I must note that *Yuckert* has compelled the parties to take positions on this motion that are somewhat inconsistent with their prior postures. Before *Yuckert*, plaintiffs contended that, since the mid–1970s, the Secretary's regulations have required adjudicators to use a strict severity standard. Now that the Supreme Court has settled that issue, plaintiffs must argue that the Secretary claimed to use a *de minimis* test, but covertly applied a stricter standard. Defendant's Brief at 23–24. Similarly, "[a]fter years of claiming that no change in his severity standard occurred, the Secretary now reverses field and maintains that the change was common knowledge." Plaintiffs' February 8, 1989 Letter.

The Social Security Act requires that a complaint challenging a final decision of the Secretary be filed within 60 days of the claimant's receipt of the decision. 42 U.S.C. § 405(g). This "60–day requirement is not jurisdictional, but rather constitutes a period of limitations." *Bowen v. City of New York*, 476 U.S. 467, 478, 106 S.Ct. 2022, 2029, 90 L.Ed.2d 462 (1986). Its purpose is "to move cases to speedy resolution in a bureaucracy that processes millions of claims annually." *Id.* at 481, 106 S.Ct. at 2030. The requirement may be waived by the Secretary, however, according to the "traditional equitable tolling principle" in a "rare case." *Id.* at 480–81, 106 S.Ct. at 2030. "While in most cases the Secretary will make the determination whether it is proper to extend the period within which review must be sought, cases may arise where the equities in favor of tolling the limitations period are 'so great that deference to the agency's judgment is inappropriate.'" *Id.* at 480, 106 S.Ct. at 2030 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976)). Thus, where "the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights," federal courts may toll the 60–day limitations period. *Id.* at 481, 106 S.Ct. at 2030.

*City of New York* involved an "unpublished.... policy mandat[ing] a presumption—applicable at the level of the initial state psychiatric assessment—that a failure to meet or equal the [Listing of Impairments] was tantamount to a finding of ability to do at least unskilled work." *Id.* at 473, 106 S.Ct. at 2026. The policy was "implemented through various internal memoranda and the 'returns' process by which SSA sends cases back to the States for correction." *Id.* at 473–74, 106 S.Ct. at 2026. This manner of enforcement prevented claimants, counsel, social workers, and advisors from discovering the existence of the policy for a long time. *Id.* at 475, 106 S.Ct. at 2027. Since the class members were entitled to believe that the denial of their claims was "the considered judgment of an agency faithfully executing the laws of the United States," and since the "full extent of the Government's clandestine policy" was uncovered only after the class suit was brought, the Court found tolling equitable in that particular case. *Id.* at 480–81, 106 S.Ct. at 2030; *see also Wong v. Bowen*, 854 F.2d 630, 631 (2d Cir.1988) ("Equitable tolling thus far has been allowed only in those cases where the government has hindered a claimant's attempts to exercise her rights by acting in a misleading or clandestine way.").

Defendant argues that where the Secretary's practice is embodied in an SSR, tolling is inappropriate. He claims that there is *dictum* to this effect in *Stieberger v. Heckler*, 615 F.Supp. 1315 (S.D.N.Y. 1985), *vacated on other grounds*, 801 F.2d 29 (2d Cir.1986). Admittedly, Judge Sand did note, in tolling the 60–day limitation in that case, that the Secretary had "issued no SSR." *Id.* at 1331. He did not, however, indicate that the issuance of an SSR rules out the possibility that the Secretary's policy is clandestine.

Defendant also relies on *Pittston Coal Group v. Sebben*, —— U.S. ——, 109 S.Ct.

414, 102 L.Ed.2d 408 (1988), in which the Supreme Court found tolling inappropriate. That case is inapposite, however, because the challenged policy in that case was stated in a "regulation ... published for all to see." *Id.* 109 S.Ct. at 425, *quoted in Smith v. Bowen*, No. 86 Civ. 6054, 1989 WL 51141, 1989 U.S. Dist. LEXIS 5226, 1 (N.D.Ill. May 5, 1989) (tolling held improper where "challenged policies [were] the subject of various social security rulings, regulations, published 'for all to see' ").

The reasoning of *McDonald v. Heckler*, 612 F.Supp. 293 (D.Mass.1985), *modified on other grounds*, 795 F.2d 1118 (1986), another case upon which the Secretary relies, has been largely undermined by *Yuckert*. The *McDonald* court assumed that the severity regulation required a heightened Step 2 test, and therefore refused to toll the statute on the ground that SSA's policy had "been evident in [the Secretary's] regulations and rulings as well as in the numerous cases raising these issues around the country and therefore has not been clandestine." *Id.* at 299. Plaintiffs no longer contend that the severity regulation expressed SSA's policy; they now allege that the regulation has been clandestinely and systematically misapplied.

I find *Hill v. Sullivan*, 125 F.R.D. 86 (S.D.N.Y.1989), which plaintiffs cite, quite persuasive. In that case, Judge Walker held that the Secretary's use of an unpublished SSR amounted to secretive conduct. *Id.* at 95. Defendant contends that *Hill* was erroneously decided, and does not comport with the "narrow rationale" of *City of New York*. Defendant's April 18, 1989 Letter at 2. I disagree. I cannot believe that the Court in *City of New York* intended to limit equitable tolling to cases involving facts identical to the situation in that case. The *City of New York* Court found it unreasonable to expect claimants to uncover SSA's internal memoranda. It is hardly more reasonable to expect diligent

claimants to find the Secretary's otherwise unpublished SSRs in specialized private legal publications. *Cf. Hyatt v. Heckler*, 807 F.2d 376, 381 (4th Cir.1986) ("It is unrealistic to believe that publication of both the agency's regulations and the court of appeals' decisions would alert lay persons to the Secretary's nonacquiescence in circuit law."), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987).

Alternatively, the Secretary asks me to distinguish *Hill* on the ground that the SSR in that case was "substantive in nature." *Id.* at 1.[4] Defendants argument must be rejected at this stage, since it is reasonably likely that further discovery will lead to evidence that SSR 82–55 was "substantial," i.e., that it deviated from the Secretary's published policy. If plaintiffs show that the Secretary applied the severity test in a manner stricter than that set forth in his published regulations, which expressed a policy of using Step 2 to screen out only *de minimis* cases, plaintiffs will have met the requirements of *City of New York*.

There is a reasonable possibility that plaintiffs will be able to adduce such evidence if they are permitted to conduct further discovery. In particular, Dr. Moritz, who has been involved in the application of the severity regulation since 1976, may know whether SSA deviated from the policies expressed in the severity regulation in the years before this suit was brought. Although it is less certain that the other deponents will have personal knowledge of how the regulation was applied, it is likely that their testimony may lead plaintiffs to find such information. Further discovery is therefore warranted under Rule 56(f).

My decision to permit further discovery is supported by a decision which was rendered while this motion was *sub judice*, *Wilson v. Sullivan*, 709 F.Supp. 1351 (D.N.J.1989). In that case, which involved an identical challenge to Step 2 on behalf of a

---

**4.** Judge Walker's decision was not limited to substantive SSRs. Indeed, Judge Walker did not even decide whether the SSR involved in *Hill* was substantive. He merely denied the Secretary's motion to dismiss the Administrative Procedure Act claim on the ground that the

"record requires further development of whether or not the rulings in question substantively changed the existing right of a widow claimant to receive an individualized assessment of her medical condition. *Hill*, at 93.

class in New Jersey, and which was before the court on a motion similar to this one, Judge Brotman refused to reach the merits of the tolling issue without further discovery:

> The Secretary claims that—unlike *City of New York*—this case does not involve any clandestine government policy that will be uncovered in the course of litigation. In essence, the Secretary has moved for summary judgment on the equitable tolling issue.
>
> The court finds that ruling in favor of the Secretary at this time would be premature. The Secretary has not met his initial burden of establishing the absence of any genuine material factual issue on the question of a clandestine government policy. Although plaintiffs have no direct proof of an unspoken policy, the court cannot say that plaintiffs will not uncover such a policy during this litigation. In *City of New York* the clandestine practice did not become clear until trial. 476 U.S. at 474–75 [106 S.Ct. at 3026–27]. If this litigation were otherwise at an end, the court would not expand the class. However, because the court's jurisdiction over this case will continue, it cannot foreclose the possibility that such a policy will be discovered at some later point at which time retrospective expansion of the class would be appropriate.

*Id.* at 1361.

■ Defendant contends that permitting plaintiffs to depose its agency officials would constitute a "judicial inquir[y] into legislative or executive motivation [and require] a substantial intrusion into the workings of other branches of government." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 n. 18, 97 S.Ct. 555, 565, 50 L.Ed.2d (1977); *accord Citizens to Preserve Over-*

*ton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941). Yet plaintiffs do not seek to determine "the subjective motivation of any decisionmaker." Plaintiffs' February 8, 1989 Letter at 2. They merely wish to learn whether the Secretary's practices, embodied in internal rulings, memoranda, and informal communications, differed from his express policies during the years before this suit was brought. Plaintiffs are certainly entitled to ask the Secretary's officials whether such a covert practice existed.[5]

Defendant also claims that Congressional inquiries concerning the severity regulations made its practices public long before plaintiffs brought suit. I disagree. First, it would be unreasonable to expect that a claimant, diligently attempting to discern the meaning of the Secretary's regulations, would examine Congressional hearings dealing with the Social Security Act. *Cf. Hyatt*, 807 F.2d at 381; *White v. Heckler*, 108 F.R.D. 85, 87 & 90 (S.D.N.Y.1985) (policy mandated by internal SSA memorandum and Program Operations Manual System was covert, even though it was "revealed in pages of the Federal Supplement"). Second, I am not persuaded that there is anything in the Congressional testimony that would place a claimant on notice of a covert heightened severity test.[6] At best, the hearings suggest that an increase in severity denials might be due to increased federal guidance through oral and written instructions, training sessions, and quality assurance reviews. Plaintiffs had no way of knowing the content of these instructions, and therefore could not evaluate whether SSA was misapplying its regulations. Plaintiffs' February 8, 1989 Letter at 3 n. 1.

Finally, defendant contends that the statute of limitation cannot be tolled merely

**5.** Defendant also contends that "the Secretary's policy is not to be found in the recollections, impressions and opinions of [SSA] officials. That policy is set forth in the Secretary's official rulings, regulations and other communications to adjudicators." Defendant's Reply Brief at 8. Yet plaintiffs' post-*Yukert* claim is that the Secretary's practice, not policy, violated the Social

Security Act. The testimony of agency officials is clearly material as to whether the Secretary's practice differed from his policy.

**6.** Of course, this may be because there was no covert practice, but plaintiffs are nevertheless entitled to further discovery on that issue.

because the plaintiff is ignorant of his legal rights. *United States v. Kubrick*, 444 U.S. 111, 122, 100 S.Ct. 352, 359, 62 L.Ed.2d 259 (1979). This argument is based on a misunderstanding of *City of New York.* While everyone is presumed to know the law, no one is expected to know of the Government's covert violation of the law. Plaintiffs maintain that the Secretary secretly disobeyed the Social Security Act and his own regulations by applying a heightened severity test. If this is true, and plaintiffs were unable to discover this systematic practice despite due diligence, then tolling will certainly be appropriate.

Although it would be possible to permit discovery to proceed on plaintiffs retrospective claims while adjudicating the merits of plaintiffs' prospective claims, I do not think that such a procedure would be efficient.[7] Therefore, defendant's motion for summary judgment is denied at this time. Defendant may re-submit his motion after discovery is completed.

### CONCLUSION

For the reasons stated above, defendants motion for summary judgment is denied. The parties are directed to complete further discovery by September 11, 1989. A status conference is hereby scheduled for September 15, 1989 at 9:15 in room 1902 of this Courthouse.

SO ORDERED.

---

**7.** For essentially the same reason, I need not determine whether further discovery is warranted on plaintiffs' claim that retroactive relief should be granted in cases where the Secretary failed to consider the combined effect of different impairments at Step 2.