WILLIAM AYALA et al., Appellants, v V & O PRESS COMPANY, Respondent, and JOHN HUMM SAFETY EQUIPMENT CO., Appellant.

Second Department, March 2, 1987

## APPEARANCES OF COUNSEL

*Lewitas & Yohonn (Lois Sylor Yohonn* of counsel), for William Ayala and another, appellants.

*Lester Schwab Katz & Dwyer (Eric A. Portuguese* and *Steven B. Prystowsky* of counsel), for John Humm Safety Equipment Co., appellant.

*Bower & Gardner (Steven J. Ahmuty, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

These appeals present a number of legal issues. Most notable among these is the question of whether a party who is retained to perform a specific repair with respect to a certain machine, and who performs that repair work without flaw, may be liable for damages upon the theory that he negligently failed to warn the owner of the machine of a design defect inherent in the machine. We hold that, in the absence of any contractual duty to service a given product on a continual or periodic basis, a repairer should not be subjected to liability based on the failure to warn of a design defect.

This is an action to recover damages resulting from personal injuries allegedly suffered by the plaintiff William Ayala on August 30, 1977. The complaint states two causes of action. The first is asserted on behalf of the plaintiff William Ayala, and is based solely on the doctrine of strict products liability. The second cause of action comprises the coplaintiff Sarah Ayala's derivative claim for loss of consortium. It is alleged in the complaint that Mr. Ayala, while operating a certain incline press in the course of his employment with the third-party defendant Empire Silver Company, Inc., sustained a traumatic amputation of all or part of several fingers. The plaintiffs, in their complaint, identify both named defendants, the V & O Press Company, Inc. (hereinafter V & O Press) and John Humm Safety Equipment Co. (hereinafter Humm), as manufacturers of the subject machine.

After issue had been joined and several depositions had been taken, the defendant Humm made a motion for summary judgment. The defendant V & O Press thereafter made a cross motion for the same relief. These motions were supported by affidavits or affirmations executed by the defendants' respective attorneys, as well as selected portions of the transcripts of the testimony from various witnesses' depositions. The plaintiffs submitted papers in opposition to Humm's motion only, allegedly because they had not received timely notice of the cross motion for V & O Press. The court, by order dated October 18, 1986, granted the unopposed cross motion of V & O Press, but denied Humm's motion for summary judgment. The plaintiffs then sought to vacate their default and for reargument of the cross motion, which was granted. Upon reargument, however, the court adhered to its original determination granting the cross motion of V & O Press for summary judgment.

Both the defendants asserted in their motion papers that the subject machine had been materially altered since it left the hands of the manufacturer, so that, under the rule of *Robinson v Reed-Prentice Div.* (49 NY2d 471), the defendants were relieved of any liability. The material submitted by the defendants in connection with their motions proved that the subject incline press, identified by serial No. 203-35, was manufactured by the V & O Division of Rockwell Manufacturing Company, and shipped to T. Cohn and Company in Brooklyn, New York, on November 28, 1947. The testimony of the representative of V & O Press is somewhat contradictory, however. At one point he testified that although the press was

shipped by "The V & O Division of Rockwell Manufacturing Company", it was actually manufactured by the "V & O Press Company". On appeal, no issue is raised concerning the interrelationship of these various corporate entities. When the product was shipped in 1947, it included a "sweep guard" and, possibly, other safety devices as well.

From the foregoing, it is clear that defendant Humm had no role whatsoever in the manufacture of the incline press. With respect to the defendant Humm, then, the allegations of the complaint are unfounded. The evidence adduced by Humm in support of its motion establishes that, in 1967, the plaintiff William Ayala's employer, the third-party defendant Empire Silver Company, Inc., requested it to replace various parts missing from the press. Among the replacement parts furnished by Humm was a sweep guard. Humm also installed a foot pedal and a clutch rod, without which the press could not be activated.

In opposition, the plaintiffs averred that the sweep guard which had been installed by Humm was made so that it could be adjusted to allow for the different sizes of various dies, and that the guard was, consequently, easily removed. According to William Ayala, prior to this accident, the guard had been removed and was not anywhere in the area of the press. Certain side safety gates had also been wired so as to be rendered ineffective. As he had on other occasions, Ayala nonetheless proceeded to use the machine, having set it for "single-stroke operation". However, at one point, while Mr. Ayala was removing a base from the press, the ram descended without warning, resulting in the injuries to his hand.

Mr. Ayala also averred that he believed the guard installed by Humm was "similar" to that which had originally been furnished by V & O Press, although it may have had a slightly different method of operation. Further, there is no proof in the record as to how any alleged difference between the safety devices originally furnished by V & O Press and those installed by Humm may have contributed to the accident.

The plaintiffs submitted an affidavit of an engineer who had inspected the press after the accident. This expert offered his opinion that the subject accident would not have occurred (1) if the equipment installed by Humm had been in place at the time of the accident, and (2) if such equipment had complied with certain government and industry standards. Although

this expert went into some detail in describing how the safety features installed by Humm were inadequate, when considered in light of government and industry standards, he did not suggest how these alleged inadequacies—rather than the absence of the safety features which Humm had installed—caused or contributed to this accident. Nor did this expert state how, if at all, the safety features installed by Humm were in any way different from those which were originally furnished with the press by V & O Press in 1947. This expert also alleged that V & O Press was responsible for the defective design of the product, specifically with respect to the aspect of the design which permitted easy removal of the sweep guard.

The plaintiffs contend (1) that the rule of *Robinson v Reed-Prentice Div.* (49 NY2d 471, *supra)* is inapplicable to this case, and (2) that the cross motion of the defendant V & O Press was not supported by competent evidence. The latter contention is easily disposed of. The courts have repeatedly held that a proper evidentiary showing may be made in a motion for summary judgment by submission of attorneys' affirmations supported by transcripts of sworn deposition testimony *(see, Gaeta v New York News,* 62 NY2d 340, 350; *O'Connor v G & R Packing Co.,* 53 NY2d 278, 283-284; *Zuckerman v City of New York,* 49 NY2d 557, 563).

As to the former contention, we agree with the plaintiffs that *Robinson v Reed-Prentice Div. (supra)* is not controlling under these circumstances. In that case, the Court of Appeals held that the manufacturer of a product is not liable for an injury which occurs during the use of the product, where such product had been modified since leaving the manufacturer's hands, and where it is shown that the accident would not have occurred but for the subsequent modification. This rule has been qualified in subsequent case law. In *Lopez v Precision Papers* (67 NY2d 871, *affg* 107 AD2d 667), the Court of Appeals held that a manufacturer of a product, the design of which incorporates a certain safety feature, may be held liable under a design defect theory even though the removal of that safety feature caused the accident, provided that the product "was purposefully manufactured to permit its use without the safety guard" *(Lopez v Precision Papers, supra,* at 873). Since, as described above, the plaintiffs submitted certain evidence from which it could be inferred that the press was purposefully designed so as to allow removal of the sweep guard,

summary judgment was improperly granted to the defendant V & O Press.

The defendant Humm contends that it had no duty either to redesign the subject incline press or to warn its owner, the plaintiff William Ayala's employer, of any existing design defect. We agree with this contention, and find that the defendant Humm is entitled to summary judgment.

As noted above, the evidence tendered by the defendants established that Humm neither designed nor manufactured the subject press. Thus, the allegations in the complaint with respect to Humm were shown to be without foundation. Under modern practice, however, a court should not grant judgment summarily against a plaintiff simply because the theory of liability pleaded in the complaint is shown to be meritless. Instead, the court must scrutinize the plaintiff's submissions in order to determine whether any viable cause of action has been alleged and supported by admissible evidence therein, in which case, leave to amend the complaint should be granted and summary judgment denied (see, Alvord & Swift v Muller Constr. Co., 46 NY2d 276; Afco Time Payment v Security Ins. Co., 111 AD2d 634, 635; Gee v Gee, 113 AD2d 736, 737). Therefore, we must determine whether any unpleaded cause of action against Humm has been established by competent evidence in the plaintiffs' submissions in opposition to Humm's contentions.

In opposition to Humm's contentions, the plaintiffs' expert alleges that Humm should be liable because the component parts it manufactured were defective. New York recognizes that a component part manufacturer is exposed to liability where it supplies a defective part which causes an accident. Liability is recognized either under a negligence theory (Smith v Peerless Glass Co., 259 NY 292, rearg denied 259 NY 664) or under a theory of strict products liability (see, Yates v Dow Chem. Co., 68 AD2d 907; Clark v Bendix Corp., 42 AD2d 727; cf., Goldberg v Kollsman Instrument Corp., 12 NY2d 432; Codling v Paglia, 32 NY2d 330; see also, 1 Weinberger, New York Products Liability § 5:05). In the case under review, however, the plaintiffs' expert failed to identify any supposed defect in the manufacture or design of the actual parts furnished by Humm. Instead, the expert refers to Humm's "design of the safety system". It is clear from the record, however, that Humm did not design the safety system; it merely furnished certain parts needed to make the machine, as designed by V & O Press, operate safely. Even assuming that

one or more of the actual parts, e.g., the sweep guard, was defective, it is manifest that any such defect could not have caused the accident since, for example, the sweep guard was not even on the machine when the accident occurred. Thus, there is no cause of action asserted based on any defect in the parts supplied by Humm.

Also, the plaintiffs, in their opposition papers, suggest that Humm could be held liable for negligence in the installation of the parts, or for its failure to warn the plaintiff William Ayala's employer as to the supposed dangerousness of the machine. We may assume that Humm was aware of the existence of a "two-hand trip" mechanism which allegedly would have prevented this accident, and that it failed to advise Mr. Ayala's employer of the advisability of using such a device. Assuming the truth of these allegations, we hold that such allegations do not establish a prima facie case, under either a strict products liability or negligence theory.

First, the law is clear that a repairer may not be held liable under a strict products liability theory, because a repairer is simply not among those who are in the business of making and selling products for public consumption (see, *Nickel v Hyster Co.,* 97 Misc 2d 770, 771 [Lazer, J.]; see also, *Raritan Trucking Corp. v Aero Commander,* 458 F2d 1106; *Johnson v Ellis & Sons Iron Works,* 604 F2d 950, 955; *Taylor v Paul O. Abbe, Inc.,* 516 F2d 145; *Lemley v J & B Tire Co.,* 426 F Supp 1378; see also, Restatement [Second] of Torts § 402A). However, the question remains whether a repairer can be liable under a negligence theory where, as alleged, if not proven, here, the repairer fails to use due diligence in informing the owner of the product of a defect in the design of the product.

One authority has stated that "[w]hether a repairer is under a duty to inform his employer [the product owner] of a dangerous condition, which he has not been employed to repair, but which he discovers in the course of making the repairs agreed upon, is not clear" (1 Frumer & Friedman, Products Liability § 5.03 [3], at 68.1-69). This question appears to have been noted, but not answered, in this court's decision in *Pugh v Weber* (29 AD2d 567; see also, *Wissman v General Tire Co.,* 327 Pa 215, 192 A 633). The American Law Institute, in a caveat after Restatement (Second) of Torts § 403, indicated that it expressed no opinion on this question. We conclude that there is no valid reason to impose negligence liability upon a repairer of a product based on its alleged failure to warn of a design defect. In *Vermette v Kenworth*

*Truck Co.* (68 NY2d 714, *revg* 111 AD2d 448) the Court of Appeals held that the lower courts had erred in denying summary judgment in favor of a party defendant who was shown to have performed certain repair work on a truck which later went out of control while being driven by the plaintiff's decedent. The record in the *Vermette* case indicated that there was no manufacturing defect present in the truck, on its "fifth wheel dolly assembly", which is the device used to link the tractor to the trailer. The Appellate Division, Third Department (two Justices dissenting), held that the plaintiff had successfully resisted the repair firm's summary judgment motion by alleging that the repairer was aware of numerous complaints about the truck's steering and control mechanisms, and yet failed either properly to inspect the truck in order to locate a design defect, or to warn of such design defect.

The Court of Appeals reversed, primarily on the basis that the plaintiff's allegations were not supported by competent evidence. However, the court went on to emphasize that the "plaintiff did not controvert [the repairer's] proof that it had 'no written or oral agreement * * * [with the] employer of plaintiff's decedent * * * to provide routine or systematic maintenance on [its] vehicle' " *(Vermette v Kenworth Truck Co.,* 68 NY2d 714, 717, *supra).* As in the *Vermette* case, the absence of any proof that the defendant Humm agreed to provide systematic maintenance of the subject press is a critical factor which weighs against the imposition of liability for negligence.

Similar issues have arisen in cases where personal injury plaintiffs sought to recover damage from corporate entities which were shown to have acquired the assets of predecessor corporations which manufactured defective products. In *Schumacher v Richards Shear Co.* (59 NY2d 239), the Court of Appeals held that, although a particular corporate defendant would not be liable to the plaintiff merely because of its status as a successor to the corporation which manufactured the offending product, that defendant could be held liable because of its failure to warn of the alleged defect in the product. However, the court held such liability would exist only upon a showing that the successor corporation had sufficient contacts with the product owner as, for example, where the successor corporation actively offered to service the product *(Schumacher v Richards Shear Co., supra,* at 248-249). The court suggested that a single service call would be insufficient to establish the sort of contact with the product owner needed to

trigger a duty to warn *(see also, Travis v Harris Corp.,* 565 F2d 443 [single service call to prior owner of product insufficient to trigger duty to warn]; *cf., Leannais v Cincinnati, Inc.,* 565 F2d 437). A successor corporation or, for that matter, any party at all, which undertakes to service a machine on a systematic basis arguably becomes "an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products" *(Vandermark v Ford Motor Co.,* 61 Cal 2d 256, 262, 37 Cal Rptr 896, 899, 391 P2d 168, 171, quoted in *Ray v Alad Corp.,* 19 Cal 3d 22, 34, 136 Cal Rptr 574, 582, 560 P2d 3, 11, and *Nieves v Bruno Sherman Corp.,* 86 NJ 361, 371, 431 A2d 826, 831).

In the case now under review, there is no proof of any ongoing service agreement between the plaintiff William Ayala's employer, the owner of the incline press, and the defendant Humm. The accident occurred approximately 10 years after Humm had serviced the product. There is no proof that Humm did not provide that which the product owner requested. There is no proof that the parts installed by Humm were themselves defective. There is no proof that the parts installed by Humm were so different from the parts originally furnished by V & O Press, as to permit the inference that Humm actually altered the design of the machine. Humm should not be exposed to liability where the most it did was to restore the subject press to a condition in accordance with its design. By performing this service, Humm should not be held responsible for failing to warn that the design is defective.

To hold otherwise would be to expose to liability every contractor who, over the lifetime of a product, repairs it in even the slightest way, simply upon the premise that the contractor ought to have warned of a dangerous condition inherent in the product's design for which he was in no way responsible. We do not choose to expand the scope of products liability to such an unwarranted degree.

Accordingly, the determinations under review should be set aside, the defendant Humm's motion for summary judgment granted, and the cross motion of V & O Press for summary judgment denied.

THOMPSON, J. P., NIEHOFF, KUNZEMAN and SULLIVAN, JJ., concur.

Ordered that the appeal from so much of the order dated October 18, 1985, as granted the cross motion of the V & O Press Company is dismissed, without costs or disbursements,

as no appeal lies from an order entered upon a default, and on the ground that that portion of that order was superseded by the order dated January 9, 1986, made upon reargument; and it is further,

Ordered that the order dated October 18, 1985, is otherwise reversed, on the law, without costs or disbursements, and the motion by the defendant John Humm Safety Equipment Co. for summary judgment dismissing the complaint insofar as it is asserted against it and the cross claims and counterclaims asserted against it is granted; and it is further,

Ordered that the order dated January 9, 1986, is reversed insofar as appealed from, on the law, without costs or disbursements, so much of the order dated October 18, 1985, as granted the cross motion of the defendant the V & O Press Company for summary judgment dismissing the complaint insofar as it is asserted against it and the cross claims and counterclaims asserted against it, is vacated, and that cross motion is denied.