Phyllis MELOFF, Plaintiff–Appellant,

v.

NEW YORK LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 636, Docket 94–7488.

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1994.

Decided April 6, 1995.

Debra L. Raskin, New York City (Judith P. Vladeck, Julian R. Binrbaum, John A. Beranbaum, Vladeck, Waldman, Elias & Engelhard, P.C., of counsel), for plaintiff-appellant.

Christopher M. Mason, New York City (Hunton & Williams, of counsel), for defendant-appellee.

Before: OAKES, ALTIMARI and WALKER, Circuit Judges.

OAKES, Senior Circuit Judge:

This appeal, from the grant of summary judgment to defendant in an employment discrimination and defamation case, presents issues that are not new but an application of them to facts that require elaboration. The judgment of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge,* came with very limited time for discovery by plaintiff though some months had elapsed since the papers on the motion for summary judgment had been filed. It also came with serious issues of fact unresolved. Accordingly, for the reasons set forth below, we vacate.

Plaintiff Phyllis Meloff ("Meloff") was employed by defendant New York Life Insurance Company ("NY Life") for 27 years until the involuntary termination of her employment on January 10, 1992. Her performance reviews and commendation letters demonstrate that her work performance throughout her employment, or at least until the very last months thereof, was uniformly "positive" and "effective." She periodically received promotions, the last of which in 1986 was to the position of Administrative Assistant in the Individual Policy Services ("IPS") Department at NY Life's home office in New York City. In April 1991, she sought what she believed was a long-overdue promotion from the director of her department, John Begley. She was told that Begley and his supervisors, Vice President of the IPS Department Richard Koontz and Corporate Vice President Jim Mellbye, were pleased with her work and that Begley would discuss the matter of promotion with the higher-ups. In August of 1991, however, Begley told Meloff that he would need more "substance" in order to "sell" her promotion to the Senior Vice President of the IPS Department, John Foy, and to Koontz. Meloff responded that less-qualified males were being promoted over her, thus raising the spectre of sex discrimination at NY Life.

Meloff met with Mellbye in early October of 1991. He told her he would be in a better position to "sell" the promotion to his superiors if the Dallas Phone Center Project, on which she had been working, was successful. The project was successfully completed in October of 1991, and when she met with her director for her year-end performance evaluation it turned out to be excellent. Again, Meloff referred to the fact that men were being promoted over her and wondered whether she was being discriminated against. On or about December 5, 1991, Meloff was informed that she would not be promoted because her job position was insufficiently important to warrant promotion. When she met with Mellbye on December 12, 1991, he informed her that she was not being considered for a promotion, and she informed him that she thought she was being discriminated against on the basis of sex. Less than a month later, she was fired. The reason given to her was "credit card fraud"; this explanation was sent to a number of individuals in the corporation by way of the computerized electronic mail system. The electronic mail was entitled "Subject: Fraud," and Meloff was said to have "used her corporate American Express card in a way in which the company was defrauded."

The basis for the accusation of fraud was the fact that Meloff had charged her commuter ticket for train travel to and from work on her company credit card. She had done this back in March of 1991, and in April 1991 had paid for her charges by taking to the Human Resources Department Transportation Coordinator, Alice Orisino, a check in the amount she owed. That check was delivered to the company's Treasury Department along with documentation in the form of a credit memorandum which Orisino prepared for Meloff, and the Treasury Department accepted this check and documentation without controversy. Thereafter, and until December 1991, Meloff continued to charge her monthly commuter ticket on her corporate credit card. During this period, Meloff did not reimburse NY Life for her charges, and no one informed her that she had done anything improper or violated any corporate policy. She said in her papers opposing summary judgment that she knew of other employees who charged their personal travel and other personal expenses to their company credit cards, and that these employees were never disciplined, much less accused of misconduct of any kind.

On January 6, 1992, Meloff was confronted by Budget Coordinator Larry Contello, who informed her that it was against company policy to charge personal expenses to a company credit card. In fact, the only policy of which she was aware was reflected in the agreement signed upon requesting the card; this provided that she would "indemnify" NY Life for "any and all personal expenditures" incurred on the card. This agreement, of course, implies that personal expenditures could be charged on the card provided that there were indemnification.

Meloff maintains that she had previously prepared a check for $3,600 on December 19, 1991, postdated to December 23, 1991—to allow time for the direct deposit of her salary check to clear—to reimburse NY Life for her commuter pass expenditures on the credit card, but she was out of the office on December 19 and did not return until January 6, 1992. When Meloff returned to the office on January 6 and was confronted by Contello, Contello informed her that no procedure existed for reimbursing the company for personal travel expenses, and he accused her of dishonesty. When she discussed the issue with Mellbye the following day, he said it was "no problem" and "no big deal," and she presented him with the December 23, 1991, check. She heard nothing further about the matter until she was fired on January 10, 1992. Thereafter she did make a $1,400 payment to American Express to pay the amount outstanding on her company credit card; the check, however, bounced because her salary check had not been "direct deposited" in her account. During the nine months (April 1991 to December 1991) in which Meloff failed to reimburse NY Life for her personal charges on the card, Meloff's charges totaled some $3,879.

Meloff filed suit alleging both employment discrimination and defamation on October 1, 1992, and defendant NY Life appeared on approximately December 10, 1992. The closing date for plaintiff's summary judgment papers was February 5, 1993, defendant never having filed an answer and instead moving both to dismiss and for summary judgment. Plaintiff's document requests and interrogatories, submitted on December 28, 1992, were not answered until February 3, 1993, just two days before plaintiff's response to the motion for summary judgment was required to be filed.

While plaintiff did not seek to take depositions either prior to February 5, 1993, or in the eight months that thereafter elapsed before the summary judgment motion was determined, no pretrial conferences had been held, no discovery deadlines set, and her opposition papers had made it clear that she needed depositions, having hardly had an opportunity to digest the responses to her interrogatories and the documents filed in response to her request at the time she filed her opposition papers. Thus, as plaintiff claimed in her opposition papers of February, 1993, she had had no opportunity to explore the motivations and reasons for terminating her employment or for the E-mail method in which this was done. We cannot agree with NY Life's suggestion (Br. at 14) that plaintiff somehow lost her right to take depositions.

We also note that Fed.R.Civ.P. 56(f) states that when it appears from the affidavits of a party opposing a motion for summary judgment that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may either deny the summary judgment motion or "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." This the district court did not do. Instead, it held that (a) since NY Life had set forth a valid reason for discharging Meloff, *i.e.*, her failure to reimburse NY Life for nine months, the issue was not whether NY Life's policy allowed its employees to make personal charges on their corporate credit cards but whether Meloff's use of the card for nine months without reimbursement was a pretext for gender discrimination; and (b) that Meloff failed to present evidence sufficient to establish a genuine issue of fact as to the reasons for her discharge within *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court held that Meloff's defamation claim also failed, since Meloff had the same burden with respect to that claim as with the gender claim, not having created a genuine issue of material fact as by showing that other employees had indeed not reimbursed NY Life on a monthly basis for personal charges to the corporate credit card.

While we have found summary judgment inappropriate in numerous discrimination cases, *compare Cronin v. Aetna Life Insurance Co.,* 46 F.3d 196 (2d Cir.1995) (finding material issues of fact precluded summary judgment); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29 (2d Cir.1994) (same); *Henry v. Daytop Village, Inc.,* 42 F.3d 89 (2d Cir.1994) (same); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219 (2d Cir.1994) (same) *with Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502 (2d Cir.1994) (finding summary judgment appropriate), we have also held and pointed out that summary judgment may be appropriate in discrimination cases where genuine issues of material fact are absent, even though a precaution must be exercised where intent is genuinely an issue. *See TRM Copy Centers,* 43 F.3d at 40; *Gallo,* 22 F.3d at 1224.

■ The district court quite properly and correctly understood the law pertaining to the grant of summary judgment. However, by faulting plaintiff where she received necessary responses to her interrogatories so close to the date of filing opposition papers on the summary judgment motion that she could hardly have had time to digest either the documentation she was supplied or the answers to the interrogatories, much less to take depositions, the district court was overhasty in granting judgment. Plaintiff's affidavit in opposition to the motion for summary judgment pointed out this time problem and requested the opportunity to take depositions and seek further discovery. That affidavit was sufficient within *Hudson River Sloop Clearwater, Inc. v. Department of Navy,* 891 F.2d 414, 422 (2d Cir.1989), where we pointed out that such an affidavit should explain

(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

This is not a case like *Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 512 (2d Cir.1989), where we affirmed a grant of summary judgment when appellants had given the district court no basis to conclude that further discovery would yield proof of a written agreement that would satisfy the statute of frauds. Here, rather, there were questions as to what company policy was, assumed by the court to be that nine months of non-payment was to be treated as fraud. The court also assumed that it was that policy which provided the basis for Meloff's termination, rather than retaliation for her claims of sex discrimination. In short, the grant of summary judgment here was premature.

■ We would add that even if it turns out that Meloff's nine-month delay in reimbursement of personal expenses provided NY Life with a legitimate, non-discriminatory reason for firing her, there is no indication that the company had any basis for publicly stating to

other people in the company that Meloff had been fired for credit card "fraud." This is particularly true where, as here, the basic credit card contract provided for indemnification in the event of personal use, almost thereby inviting such use. While the district court order granting the dismissal of the defamation claim makes some reference to qualified privilege or immunity, *see Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 376, 494 N.E.2d 70, 73, 502 N.Y.S.2d 965, 968 (1986), and *Bingham v. Gaynor*, 203 N.Y. 27, 96 N.E. 84 (1911), that issue can hardly be determined at this stage of this case.

Accordingly, the judgment is vacated without prejudice to any subsequent ruling at an appropriate time after plaintiff has been given ample opportunity for discovery.