Paul SANDERS, Plaintiff,

v.

QUIKSTAK, INC. and The Rexroth
Corp., Defendants.

Paul SANDERS, Plaintiff,

v.

QUIKSTAK, INC. and Lithibar
Matik, Inc., Defendants.

Nos. 94 Civ. 5592 (WCC),
94 Civ. 8924 (WCC).

United States District Court,
S.D. New York.

June 28, 1995.

Birbrower, Montalbano, Condon & Frank, P.C., New City (Valerie J. Crown, of counsel), for plaintiff.

Standard Weisberg P.C., New York City (Arthur J. Liederman, of counsel), for defendant The Rexroth Corp.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Defendant The Rexroth Corp. ("Rexroth") has moved for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P. For the reasons stated below, we deny the motion, without prejudice to renew after the completion of discovery.

### BACKGROUND

At the time of the accident that forms the basis of this lawsuit, plaintiff Paul Sanders was employed by Package Pavement Co. to operate a palletizing machine. The parties do not dispute that when the machine functions normally, the operator manually arranges seven bags of cement mixture, received from a conveyor belt, on the palletizer loading plate. Once the bags are properly positioned, the operator uses a joystick to open the loading plate, dropping the bags onto the pallet waiting below. The operator then uses the joystick to close the loading plate and repeats the process until the pallet is fully loaded.

Plaintiff alleges, however, that on February 28, 1994, an eighth bag became caught in the palletizer, preventing the loading plate from closing. He contends that he let go of the joystick, which then returned to a neutral position, and reached into the machine to remove the stray bag. Although the loading plate should not be able to move while the joystick is in the neutral position, the loading door closed and crushed plaintiff's left elbow.

Plaintiff filed suit in June 1994 in New York Supreme Court. His complaint stated claims for negligence, strict products liability, and breach of express and implied warranty. Plaintiff alleged manufacturing and design defects in the palletizer and each of its component parts, as well as the failure by each defendant to fulfill its duty to warn of the dangers associated with operating the palletizer or its component parts. The suit was removed to this court on August 1, 1994. Plaintiff originally brought claims against a number of defendants, but has voluntarily dismissed as to all of them except Quikstak Inc. ("Quikstak"), the manufacturer of the

palletizer, and Rexroth, the manufacturer of the hydraulic unit that powered the loading plate.[1]

In the nearly eleven months that have elapsed since the suit was removed to this court, some discovery has occurred under the direction of Magistrate Judge Mark D. Fox, but discovery is by no means complete. The parties have deposed Charles Dutcher, the site manager of the facility where plaintiff was injured. Rexroth and plaintiff have exchanged interrogatories, although neither seems to be satisfied with the answers received. Rexroth has also provided some documentation about the hydraulic unit to plaintiff. Rexroth maintains that it has provided all of the information that it has about the unit; plaintiff asserts that he has not received schematics, operators' manuals and maintenance manuals that would enable his expert to determine whether the hydraulic unit was defectively designed or manufactured or whether Rexroth provided appropriate warnings. No party depositions have taken place, and plaintiff has received no discovery from defendant Quikstak.[2]

This case was transferred to us from the docket of Judge Vincent L. Broderick on March 23, 1995. At a pre-trial conference held on April 12, 1995, we set October 15, 1995, as the deadline for the completion of all discovery. Despite the limited discovery that has occurred to date, Rexroth has moved for summary judgment on all of plaintiff's claims. After a careful examination of the memoranda, affirmations and supporting documents filed by both parties, we find that granting summary judgment at this time would be improvident.

## DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). The Supreme Court has held that the entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those [materials] which it believes demonstrate the absence of a genuine issue of material fact." *Id.,* at 323, 106 S.Ct. at 2552. It may discharge that burden merely by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Id.,* at 325, 106 S.Ct. at 2553; *Gallo v. Prudential Residential Services, Ltd.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). In order to defeat summary judgment, the nonmoving party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The burden on the nonmoving party is tempered by two considerations, however. First, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.,* at 255, 106 S.Ct. at 2513. Second, summary judgment should only be entered on the ground that the nonmovant's proof is insufficient when the nonmovant has had an adequate opportunity to conduct discovery. *See Celotex,* 477

---

**1.** On December 12, 1994, plaintiff filed a second action in federal court against Quikstak and Lithibar Matik, Inc., the manufacturer of a component part of the palletizer. With the consent of the parties and because that case arose from the same events as the original suit, we ordered the actions consolidated for all purposes on June 22, 1995.

The parties have informed the court that they have agreed to dismiss the claims against Lithibar Matik, but we have not yet received the completed stipulation.

**2.** Quikstak did not appear until March 27, 1995, when it filed an answer in the second action.

U.S. at 322, 106 S.Ct. at 2552. The court should not permit the nonmoving party to be " 'railroaded' by a premature motion for summary judgment.' " *Id.,* at 326, 106 S.Ct. at 2554. The Supreme Court has indicated that "[a]ny potential problem with such premature motions can be adequately dealt with under Rule 56(f), ... if the nonmoving party has not had an opportunity to make full discovery." [3] *Id.*

■■■ Turning to the particular circumstances of this case, the defendant has based its argument in favor of granting summary judgment primarily on plaintiff's failure to allege a specific defect in the hydraulic unit.[4] In order to recover on his negligence, strict liability or implied warranty claims, plaintiff must prove the existence of a defect in the hydraulic unit. *See Robinson v. Reed–Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440, 442 (1980) (strict liability); *Rosenzweig v. Arista Truck Renting Corp.,* 34 A.D.2d 542, 309 N.Y.S.2d 93, 95 (App.Div.1970) (negligence and implied warranty). A defect in a product may consist of a mistake in manufacturing, a design flaw, or inadequate warnings for the use of the product. *See Robinson,* 426 N.Y.S.2d at 720, 403 N.E.2d at 442. In this case, there is no doubt that plaintiff has not alleged, much less produced evidence of, a specific defect in the hydraulic unit. Plaintiff's response to Rexroth's interrogatories and plaintiff's affirmation in opposition to this motion candidly admit that plaintiff has

been unable as yet to identify a defect in the hydraulic unit. *See* Response to Supplemental Interrogatories, dated January 25, 1995, at ¶¶ 3, 4, 8, 9, attached as Exhibit F to the Affirmation of Arthur J. Liederman, dated March 8, 1995; Affirmation of Valerie J. Crown, dated April 19, 1995, at ¶ 14 ("Crown Affirmation").

■■■ Under certain circumstances, however, a plaintiff need not prove a specific defect in the product at issue. Despite an absence of proof of any specific defect in a product, a jury may infer that an accident occurred because of a defect when the plaintiff has proven that the product did not perform as intended and has excluded all causes of the accident not attributable to the defendant.[5] *See Halloran v. Virginia Chemicals Inc.,* 41 N.Y.2d 386, 393 N.Y.S.2d 341, 343, 361 N.E.2d 991, 993 (1977). Thus, in *McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 648–49, 406 N.E.2d 460, 464 (1980), the Court of Appeals held that a *prima facie* case of products liability had been stated against the manufacturer of the hopper mechanism on a garbage truck where the plaintiff and his co-worker testified that the mechanism had activated by itself, amputating plaintiff's arm. The court held that, despite some evidence tending to negate the presence of a defect, a viable issue of fact existed as to whether the mechanism self-activated and a jury could infer from the

---

**3.** Fed.R.Civ.P. 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**4.** Defendant Rexroth also asserts that it cannot, as a matter of law, be liable to plaintiff because the manufacturer of a product that incorporates a component part is responsible for the final product, including injuries caused by the component. *See* Defendant's Reply Affirmation, at ¶ 12. This is simply not the case. "[A] component part manufacturer is exposed to liability where it supplies a defective part which causes an accident." *Ayala v. V & O Press Co.,* 126 A.D.2d 229, 512 N.Y.S.2d 704, 707 (App.Div.1987).

The component manufacturer may not be held liable where the component was manufactured according to designs, plans, or specifications furnished by the manufacturer of the final product. *See Leahy v. Mid–West Conveyor Co.,* 120 A.D.2d 16, 507 N.Y.S.2d 514, 516 (App.Div.1986), *appeal denied,* 69 N.Y.2d 606, 514 N.Y.S.2d 1024, 507 N.E.2d 320 (1987). This exception to the general rule is not likely to apply in this case, however, because Rexroth has asserted that Quikstak bought its product off-the-shelf, *see, e.g.,* Defendant's Reply Affirmation, at ¶ 3.

**5.** If, however, the defendant produces any evidence that the accident was not necessarily attributable to a defect, the plaintiff must come forward with direct evidence of a specific defect. *See Winckel v. Atlantic Rentals & Sales, Inc.,* 159 A.D.2d 124, 557 N.Y.S.2d 951, 953 (App.Div. 1990).

testimony that the mechanism malfunctioned because of a defect.

We believe that it is quite likely that an issue of fact exists regarding why the loading door of the palletizer closed on plaintiff's elbow. The accident could have been caused by a malfunction in the joystick, a malfunction in the hydraulic unit (including its control circuitry), or operator error. Plaintiff has, however, stated that he let go of the joystick, allowing it to return to the neutral position, before reaching into the palletizer, *see* Affidavit of Paul Sanders, dated April 18, 1995, at ¶¶ 6–7; and that the joystick appeared to be functional after the accident, *see* Crown Affirmation, at ¶ 13. He asserts that one can therefore conclude that the hydraulic unit self-activated, unexpectedly closing the loading door on plaintiff's elbow. *See* Crown Affirmation, at ¶¶ 13, 17. Given that we must draw all reasonable inferences in favor of the nonmoving party in deciding a motion for summary judgment, it is possible that a malfunction in the hydraulic unit caused the loading plate to close despite the joystick's being in the neutral position. At this juncture, we cannot rule out the possibility that plaintiff might obtain information through discovery that would enable him to allege a specific defect in the hydraulic unit that caused it to self-activate. Alternatively, plaintiff might obtain information that would tend to eliminate all other causes of the accident, thereby permitting a jury to infer that the hydraulic unit was defective.

■ In the Second Circuit, a party seeking additional discovery under Rule 56(f) must inform the court by affidavit "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995) (quoting *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989)). Thus, a mere hope of the nonmoving party that more evidence will develop is insufficient to justify denying summary judgment; instead, the discovery sought must be reasonably likely to be of use in resisting the motion. *See Dixon v. Bowen*, 126 F.R.D. 483, 486 (S.D.N.Y.1989) (Conner, J.).

Plaintiff has neither specifically requested relief under Rule 56(f) nor filed an affidavit explicitly addressing the requirements of the standard for granting that relief. In *Meloff*, however, the Second Circuit held that the district court erred in granting summary judgment where plaintiff's affidavit in opposition to the motion for summary judgment provided the necessary information and "requested the opportunity to take depositions and seek further discovery." *Meloff*, 51 F.3d at 375. Plaintiff's affirmation in opposition likewise satisfies the requirements for granting relief: plaintiff explains that he is requesting further discovery to gain information about the design and manufacture of the hydraulic unit from schematics, operating and maintenance manuals, and depositions of Rexroth personnel. *See* Crown Affirmation, at ¶¶ 13, 14, 20, 21. Plaintiff states that Rexroth has not yet produced the documents he needs. *See id.*, at ¶ 13. Plaintiff also explains that no party depositions have been taken, as defendant Quikstak has only recently appeared in the case. *See id.* Plaintiff asserts that the information he seeks may enable him to allege a specific defect in the hydraulic unit. *See id.*, at ¶¶ 14, 20. Furthermore, plaintiff may obtain information that would enable him to allege facts that would permit a jury to infer the existence of a defect. Therefore, plaintiff has demonstrated a reasonable expectation that the discovery he requests will reveal the existence of a genuine issue of material fact.

Defendant argues that plaintiff should not be given additional time for discovery because plaintiff has had ample time, during the eleven months since this case was removed to this court, to inspect the hydraulic unit and to specify the defects he is alleging. While we wish to encourage the expeditious preparation of cases for trial,[6] we do not find defendant's argument persuasive. Inspection of the hydraulic unit is not the only

---

**6.** Following the issuance of this decision, we expect discovery in this case to begin to move forward efficiently. We have directed that discovery be completed by October 15, 1995.

avenue of discovery through which plaintiff may gain information about the unit. Depositions of Rexroth personnel and examination of schematics and manuals may reveal potential design flaws, manufacturing imperfections, or operating dangers that are not apparent from a visual inspection or even upon trial runs of the machinery. Furthermore, even if the discovery plaintiff receives from Rexroth does not enable plaintiff to allege a specific defect in the hydraulic unit, discovery received from defendant Quikstak may perhaps enable plaintiff to exclude other possible causes of his injury, thereby creating a genuine issue of material fact for the jury. Granting summary judgment at this time would therefore preclude plaintiff from conducting discovery to which he is entitled with respect to the hydraulic unit's role, if any, in the accident.

 Finally, defendant correctly contends that plaintiff has also presented no evidence that Rexroth made any express warranties to plaintiff with respect to the hydraulic unit.[7] Furthermore, plaintiff's affirmation in opposition to the motion does not specify the discovery that it plans to conduct on this issue. Nevertheless, we believe that a grant of partial summary judgment on the breach of express warranty claim would be premature before plaintiff has had the opportunity to depose Rexroth personnel who may be able to provide plaintiff with information that will enable him to demonstrate that genuine issues of material fact exist with respect to that claim.

Upon completion of discovery, however, defendant may renew its motion for summary judgment on any or all of plaintiff's claims if it believes that plaintiff cannot produce sufficient evidence of one or more elements of his claims on which he bears the burden of proof to permit a reasonable jury to decide in his favor.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied without prejudice to renew after the completion of discovery.

**SO ORDERED.**

---

7. Proof of a defect in the product is not an element of a cause of action for breach of express warranty. Instead, plaintiff must prove that the product did not perform as the manufacturer promised it would. *See* 1 Michael Weinberger, New York Products Liability § 16.02 (1982).