**G–I HOLDING, INC., Plaintiff,**

v.

**BARON & BUDD; Frederick Baron; Russell Budd; Ness, Motley, Loadholt, Richardson & Poole; Ronald Motley; Joseph Rice; Weitz & Luxenberg; Perry Weitz and Robert Gordon, Defendants.**

**No. 01 Civ. 0216 (RWS).**

United States District Court,
S.D. New York.

Nov. 18, 2003.

---

Friedman, Wang & Bleiberg, New York City, By: Peter N. Wang, Cahill Gordon & Reindel, New York City, By: Thomas J. Kavaler, for Plaintiff, of counsel.

Manatt, Phelps & Phillips, Washington, DC, By: Abbe David Lowell, Stephen L. Neal, Jr., for Defendants, of counsel.

## OPINION

SWEET, Senior District Judge.

Defendants Baron & Budd, P.C. ("Baron & Budd"), Frederick Baron ("Baron") and Russell Budd ("Budd") (collectively the "Baron & Budd defendants") have moved for the third time pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 to dismiss Counts V, VI and XII of the Fourth Amended Complaint (the "Complaint") of plaintiff G–I Holdings ("Holdings"). Holdings has moved in opposition for the third time pursuant to Fed.R.Civ.P. 56(f) for a continuance to allow for further discovery.

For the reasons set forth below, the Baron & Budd defendants' motion for partial summary judgment is denied, and Holdings' motion for a continuance is granted to conduct limited discovery.

### Parties

Holdings is a New Jersey corporation and is a holding company which includes certain former asbestos manufacturers, and is the successor by merger to GAF Corporation ("GAF"). Plaintiffs throughout the country have initiated many thousands of tort actions against GAF and Holdings arising out of the manufacture of a product known as Calsilite, an insulation product containing asbestos.

Baron & Budd is a law firm which represents plaintiffs in personal injury asbestos litigation. Frederick Baron and Russell Budd are the principals of Baron & Budd.

### Prior Proceedings

The parties and facts discussed herein are discussed in greater detail in *G–I Holdings v. Baron & Budd,* 213 F.R.D. 146 (S.D.N.Y. 2003) (*"Holdings IV"*); *G–I Holdings v. Baron & Budd,* 2002 WL 31251702 (S.D.N.Y. Oct.8, 2002) (*"Holdings III"*); *G–I Holdings*

*v. Baron & Budd,* 238 F.Supp.2d 521 (S.D.N.Y.2002) *("Holdings II")*; and *G–I Holdings v. Baron & Budd,* 179 F.Supp.2d 233 (S.D.N.Y.2001) *("Holdings I")*, familiarity with which is presumed.

On August 13, 2002, the Baron & Budd defendants filed their first motion for summary judgment against these same counts. An opinion issued on October 8, 2002, denying that motion and granting Holdings leave to take limited discovery, with a cut-off date of December 13, 2002. *Holdings III,* 2002 WL 31251702, at *6. The Court limited discovery to the cohort of 190 cases that Holdings had identified in its Fourth Amended Complaint ("FAC") and ordered that Holdings should have the opportunity to depose two affiants on whom the summary judgment motion relied, Lance Pool and Melanie Oliver. *Id.* The Court also ordered that the Baron & Budd defendants should have the opportunity to depose "Source 1" (later identified as former Baron & Budd paralegal Jesse Zavala ("Zavala")), on whose whistleblowing Holdings has relied in bringing the counts at issue. *Id.* The opinion also permitted Baron & Budd to re-file their motion for summary judgment at the close of that discovery period.

Further discovery, and further discovery disputes took place. On December 26, 2002, several days after submitting a response to a pending discovery request by Holdings, the Baron & Budd defendants moved yet again for partial summary judgment, while the discovery motion was still pending. Because discovery was still continuing, the second summary judgment motion was denied, and it was noted that "it would be appropriate to deal with a consolidated summary judgment motion from all the defendants on all potential issues ... at the close of discovery." *Holdings IV,* 213 F.R.D. at 150.

As it pertains to Counts V, VI and XII, all discovery granted by the Court has been conducted, including depositions of the individuals alleged to have been involved in the affidavit fixing. On June 30, 2003, the Baron & Budd defendants moved yet again for partial summary judgment. Oral argument on the motion was heard on September 24, 2003, at which time the motion was deemed fully submitted.

*Facts*

The following facts are taken from the parties' Rule 56.1 statements and briefs and, as required, are construed in the light most favorable to the non-movant, as applicable. They do not constitute findings of fact by the Court.

In late 1995 and early 1996, Melanie Oliver ("Oliver"), Angela Reznicek ("Reznicek"), and Zavala worked as Baron & Budd employees, with Reznicek and Zavala working under the direction of Oliver. According to Holdings, all three employees were involved in an incident in which affidavits were forged and/or had missing information inserted in them after they had been signed by the affiant. The Baron & Budd defendants deny that any affidavit fixing took place.

In support of their allegations, Holdings has submitted Zavala's testimony, in which he recounts that he was told by Reznicek, "We were told to get a pad and see if we can copy or correct these affidavits." Kavaler Affidavit, Exhibit 2 at 28 (Zavala Deposition). Zavala also testified: "I was given a pad, actually, and told to practice a person's signature and once I was—felt comfortable that I could sign this person's signature like—like he did on—another affidavit, to go ahead and sign it, sign that affidavit." *Id.* at 29.

Zavala also testified that Reznicek took a stack of incomplete and/or unsigned affidavits out of the room and that she returned minutes later with all of the affidavits complete and the signatures in place. Zavala further testified that there were "about 25 to 50" affidavits in the stack carried by Reznicek *id.* at 75, and that only "several" minutes had elapsed before the signed affidavits were returned. *Id.* at 75–76. Zavala testified that the affiants to these affidavits were Baron & Budd clients located in various parts of the country, *id.* at 79, and, when asked whether any of these 25 to 50 affiants were in Dallas on the day in question, he testified that he did not know. *Id.* When further asked whether any of the 25 to 50 affiants were in Baron & Budd's offices that day, Zavala testified that he "ha[d] no idea." *Id.* at 80. Zavala also testified that he recalled a num-

ber of the affidavits that he worked on in the conference room that day with Reznicek concerned "GIF" or "GAF" and/or "Ruberoid." *See id.* at 18–19. Ruberoid is Holdings' predecessor.

The Baron & Budd defendants note that Zavala unequivocally denies that he or Reznicek signed anyone's name to an affidavit, or that they filled out missing information or attempted to resolve problems with missing notary stamps. Zavala Dep. at 34–39, 45, 57–60, 175–77. Zavala has also testified that he was not aware of any instance during his employment at Baron & Budd in which he or anyone else filled in information on an affidavit not previously on that affidavit, or signed a name to an affidavit that was other than his own name. *Id.* at 45.

According to Holdings, Reznicek testified that she did not remember any episodes of affidavit fixing. When asked about Zavala's account of the stack of affidavits leaving the room where they were working and apparently coming back signed, Reznicek testified that she had no recollection of the events. *See* Kavaler Aff., Exh. 14 at 96–99 (Reznicek Deposition).

The Baron & Budd defendants point out that Reznicek's denial of any involvement or participation in affidavit fixing is as categorical as Zavala's. Reznicek repeatedly states that she "never heard anyone say they falsified anything and never saw anyone that did it." Reznicek Dep. at 115; *see also* 100–102, 126.

Oliver, the supervisor of Zavala and Reznicek, consistently denies any wrongdoing throughout her testimony. Reznicek denies instructing Zavala or Reznicek to sign anyone else's signature or to fill in a document that was incomplete. *See* Neal Declaration, Exh. B at 68–72 (Oliver Deposition). Oliver also denies any awareness of any affidavit fixing on the part of Zavala or Reznicek at any point in their employment at Baron & Budd. *Id.* at 96–97.

According to the Baron & Budd defendants, no settlement affidavits were used in the litigation and settlement of the cohort of cases. Russell Budd testified that between 1994 and 1997, the Center for Claims Resolution ("CCR"), a consortium of former asbestos manufacturers of which GAF is a member, never required a client affidavit as part of a settlement. Kavaler Aff., Exh. 12 at 108 (Budd Deposition). In addition to there not being a requirement that affidavits be submitted to support a settlement, both Budd and Lance Pool ("Pool"), the managing director of Baron & Budd, have both testified that in fact Baron & Budd did not submit settlement affidavits to the CCR to settle the cohort of cases or other cases pending in Texas during the relevant time period. Budd Dep. at 88–89, 108, 110, 115–16; Kavaler Aff., Exh. 6 at 9–10. 47–48, 57, 65 (Pool Deposition).

Holdings concurs that "settlement affidavits were likely not proffered to the CCR in connection with cases pending in Texas." Holdings Mem. at 19. However, Holdings points to testimony of Daniel Myer ("Myer"), who was the Director of Claims at CCR during the relevant time, who stated that the CCR "would look at, in some instances, affidavits that were supplied by plaintiff counsel" when determining if a product identification had been made. Kavaler Aff., Exh. 10 at 26 (Myer Deposition). Myer also testified that "it was not uncommon for the CCR to receive and accept affidavits from various firms' concerning global settlements," *id.* at 39, and testified that "it's entirely possible that the people who reported to [him] relied on or accepted affidavits from the Baron & Budd firm in settlements in [New York and Georgia]." *Id.* at 48. Further, Richard C. Bargon ("Bargon"), who also worked for the CCR during the relevant time, testified that "he couldn't say that Baron & Budd had never provided an affidavit in support of a particular settlement." Kavaler Aff., Exh. 11 at 56 (Bargon Deposition).

### Discussion

The Baron & Budd defendants have moved for partial summary judgment on the grounds that no genuine dispute exists as to the following material facts: 1) Oliver, Reznicek and Zavala did not engage in any form of affidavit fixing while they worked as employees for Baron & Budd; 2) Oliver, Reznicek and Zavala did not work on the cohort of approximately 190 cases specifically identi-

fied in Holdings' Fourth Amended Complaint ("FAC"); and 3) in the cohort of cases identified in the FAC, there were no settlement affidavits on which Holdings could have relied.

Holdings acknowledges that it has found "no additional corroborating evidence" for its "allegation that the fraud took place in" the cohort of cases identified in the FAC. Holdings Mem. at 4 n. 4. However, it argues that because the evidence adduced so far gives rise to an inference that fraud occurred, even if not on the cohort of cases alleged, summary judgment should be denied as premature, and Holdings should be entitled to further discovery to attempt to discover fraudulent conduct in the cases on which Oliver, Reznicek and Zavala worked, and to amend its complaint should it discover evidence of fraudulent conduct with respect to those cases. Holdings has moved pursuant to Fed.R.Civ.P. 56(f) for a continuance to take further discovery in an effort to identify any fraudulent affidavits prepared by Oliver, Reznicek or Zavala, and to determine whether those affidavits were used in settlement. Holdings has also implicitly moved pursuant to Rule 15(b) to amend the pleadings at a later time based on facts learned through further discovery.

### Standards for a Rule 56(f) Motion

Holdings has filed an affidavit pursuant to Fed.R.Civ.P. 56(f) seeking an order denying defendants' motion for summary judgment and compelling defendants to provide certain discovery. Rule 56(f) states that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

■ Courts have interpreted Rule 56(f) to provide that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion. *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Systems, Inc.,* 271 F.3d 374, 386 (2d Cir.2001) *(citing Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995)) (holding that grant of judgment was premature where plaintiff submitted properly supported Rule 56(f) request for further discovery in opposition to defendant's motion for summary judgment); *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). The district court is afforded discretion in making this decision. *Id.*

■ The Second Circuit has established a four-part test to determine the sufficiency of an affidavit or declaration submitted pursuant to Rule 56(f). The affidavit or declaration must detail: (1) the nature of the uncompleted discovery; (2) how the facts sought are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy,* 891 F.2d 414, 422 (2d Cir.1989). *See also Demery v. Extebank Deferred Comp.,* 216 F.3d 283, 286 (2d Cir.2000) (discovery should be denied where the requested discovery will not create a genuine dispute of material fact); *Contemporary Mission Inc. v. United States Postal Serv.,* 648 F.2d 97, 102 (2d Cir.1981) ("An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis on which to justify the denial of the motion.").

### Holdings Is Granted Limited Discovery to Determine The Cases Involving GAF and Ruberoid On Which Oliver, Reznicek or Zavala Worked

■ Holdings argues that it should be granted "targeted, focused discovery" to determine the following: (1) the finite, discrete

group of cases on which Oliver, Zavala and Reznicek worked, both together and separately; (2) the clients involved in those cases; (3) the defendants involved in those cases; (4) the terms under which the CCR settled those cases. Holdings Mem. at 4–5. To do so, Holdings has requested the depositions of 14 new individuals, new, unlimited depositions of eight previously deposed individuals, and inquiries into settlement agreements between Baron & Budd and the Center for Claims Resolution ("CCR"). *See* Kavaler Aff. at 5–14.

The evidence proffered by Holdings thus far just barely supports an inference of fraudulent conduct. Holdings has yet to provide any non-speculative evidence of actual affidavit-fixing by Oliver, Reznicek and Zavala.[1] Zavala has testified that Reznicek told him to practice the signature of a client and then to sign the name of that client to an affidavit. Zavala Dep. at 28–29. However, Zavala denies that he ever actually signed any name other than his own to any affidavit. *Id.* at 34. Further, Zavala testified that Reznicek took a stack of affidavits that were missing information and, when she returned a short time later, carried a stack of documents where the necessary information had been inserted. *Id.* at 75. However, Zavala could not say whether the affidavits that left the room and the ones that came back signed were the same affidavits. *Id.* at 152–54.

In *Holdings IV*, it was held that "in the absence of testimony from Reznicek, [Zavala's] lack of knowledge merely presents an issue of material fact." 213 F.R.D. at 149 n. 1. Like Oliver and Zavala, Reznicek categorically denied that she was ever "asked to sign anyone's name but my own name" or that she ever "heard anyone say they falsified anything" and that she "never saw that anyone did it." Reznicek Dep. at 100, 115. However, Reznicek did not have a specific recollection of the incident described by Zavala. When the incident was described to her, Reznicek testified: "I don't remember anything like this; any conversation like this with him." *Id.* at 98. In light of Reznicek's

failure to recall the incident, Reznicek's denial does not alter the conclusion from *Holdings IV* that an issue of material fact exists which forms a sufficient basis to grant a continuance, although it would not, without more, be sufficient to survive summary judgment once discovery is complete.

Holdings argues that this Court's restrictive discovery rulings have prevented it from uncovering evidence of the fraud. In recognition of this possibility, Holdings will be granted, as an initial step, discovery to determine whether any of the affidavits on which Oliver, Reznicek and Zavala worked which relate either to GAF or to Ruberoid were in fact fraudulent. Upon a more convincing showing that such affidavits were created, Holdings will be permitted to conform its pleading to the evidence in accordance with Rule 15(b), and to engage in further discovery to determine whether any such affidavits were submitted for settlement.

However, the broad ranging discovery requested by Holdings, which includes 14 new depositions and 8 further depositions of persons previously deposed, along with extensive written discovery, is denied at this time. Holdings essentially alleges that Oliver, Zavala, Reznicek and others are lying to the extent that they deny knowledge of or participation in any forgery of affidavits. The only evidence submitted by the Baron & Budd defendants to demonstrate that affidavit-fixing did not take place is the denials of Oliver, Reznicek and Zavala, as well as denials by Lance Pool and Russell Budd. *See* Baron & Budd Def.'s Mem. at 7–12. Verification of Holdings' allegations, then, must come from an examination of the affidavits alleged to have been forged, and by corroboration of the statements made by the affiants.

Accordingly, the following discovery is permitted at this time:

- an opportunity to depose Baron & Budd shareholder Steven Wolens regarding the asbestos cases to which Oliver, Reznicek and Zavala were assigned, either together or separately;

---

1. As the Court held *Holdings III*, the Hillis affidavit, in which a private investigator reports that Zavala recounted the creation of fraudulent affidavits at Baron & Budd, "will be insufficient to create a material issue of fact because it is inadmissible hearsay." 2002 WL 31251702, at *6.

- complete responses to the document requests and interrogatories served on the Baron & Budd defendants by Holdings on August 6, 2002 and October 21, 2002 (including an identification of all cases on which Zavala worked with Oliver and/or Reznicek), without any limitation that these responses be restricted to the cohort of cases;

- all Baron & Budd records pertaining to Oliver, Reznicek and Zavala;

- all documents concerning or evidencing any communication between or among Oliver, Reznicek and/or Lance Pool and any shareholder, attorney, or employee of Baron & Budd concerning the allegations in paragraphs 81–91 of the Fourth Amended Complaint;

- an updated privilege log in compliance with Fed.R.Civ.P. 26 and Rule 26.2 of the Local Civil Rules of this Court identifying each document responsive to the above requests that was withheld from production on the ground that it was privileged and/or subject to a claim of work product protection.

The remaining discovery requests are denied as either premature or as an impermissible "fishing expedition." *See Holdings IV*, 213 F.R.D. at 148. Holdings will not be permitted to undertake an unlimited investigation of the files and personnel of Baron & Budd in search of unspecified fraud. The FAC alleges that fraudulent affidavits were prepared under the supervision of Oliver. Accordingly, discovery will be limited to cases relating to GAF and/or Ruberoid on which Oliver, Zavala and Reznicek worked, either together or separately.

In the FAC, Holdings had also alleged, based on settlement date, trial location, and other salient characteristics, that the universe of settlements in which the false and fraudulent affidavits were contained within a set of 190 cases, all of which were filed in Texas. *See* Fourth Amended Complaint, ¶ 90. Oliver has testified that she did not have responsibility for, did not supervise, did not work on, and did not work in the same department where work was performed on the alleged cohort of cases. *See* Kavaler

Aff., Exh. 5 at 52, 78, 80, 85, 88 (Oliver Deposition).

The discovery that has been permitted by this Court has been focused thus far on the cohort of cases. *See Holdings IV*, 213 F.R.D. at 147, *Holdings III*, 2002 WL 31251702, at *5. Holdings has attempted to obtain information as to possible fraudulent affidavits in cases outside the cohort of cases, but has been limited by the strict insistence by the Baron & Budd defendants that no discovery be permitted outside the cohort of cases. The Baron & Budd defendants argue that there is no evidence of affidavit-fixing in the cohort of cases or in any other cases. The discovery granted above will enable Holdings to determine whether evidence of affidavit-fixing can be found. However, as to the issue of whether settlement affidavits existed upon which Holdings may have relied to settle cases, the Baron & Budd defendants have argued only that no settlement affidavits exist as to the cohort of cases. If in the course of discovery now permitted by the Court, Holdings is able to discover evidence of any forged affidavits relating to GAF or Ruberoid, Holdings will be further permitted to discover whether such affidavits were relied on in settling cases.

### Conclusion

The Baron & Budd defendants' motion for partial summary judgment is denied, with leave to renew upon the close of the limited discovery detailed above. Holdings' motion for a continuance is granted. Holdings may renew its further discovery requests upon a showing that fraudulent affidavits were created by or at the direction of Oliver, Zavala or Reznicek, either together or separately.

It is so ordered.